**Craig C. BURNHAM, Individually and as Trustee of the Franklin Street Realty Trust, and Burnham Associates, Inc., Plaintiffs**

v.

**CITY OF SALEM, MASSACHUSETTS, City of Salem Conversation Commission, Leo Tremblay, Individually and as Inspector of Buildings of the City of Salem, and Neil J. Harrington, Individually and as Mayor of the City of Salem, Massachusetts, Defendants**

**Civil Action No. 98–1197–REK.**

United States District Court,
D. Massachusetts.

May 25, 2000.

---

Paul W. Shaw, Brown Rudnick Freed & Gesmer, Heather L. Overholser, Jonathan B. Bruno, Schwartz, Shaw & Griffith, Boston, MA, for Plaintiffs.

Elizabeth M. Fahey, Pierce, Davis, Fahey & Perritano, LLP, John J. Cloherty, Pierce, Davis, Fahey & Perritano, LLP, Boston, MA, Kevin T. Daly, Salem, MA, for Defendants.

Memorandum and Order

KEETON, District Judge.

## I. Pending Motions

Pending before this court are the following motions:

(1) Defendants' City of Salem and City of Salem Conservation Commission Motion for Summary Judgment (Docket No. 49, filed January 31, 2000) with Memorandum in Support (Docket No. 50) and Statement of Material Facts As to Which There is No Genuine Issue to be Tried (Docket No. 53);

(2) Defendants' Neil J. Harrington and Leo E. Tremblay Motion for Summary Judgment (Docket No. 51) and Memorandum in Support (Docket No. 52) and Statement of Material Facts As to Which There

is No Genuine Issue to be Tried (Docket No. 53).

## II. Procedural and Factual Background

### A. Procedural History

On April 5, 1996, Plaintiffs filed this civil action in Essex Superior Court, Massachusetts, alleging purely state-law claims against the City of Salem (the "City"), the Salem Conservation Commission (the "SCC"), Leo E. Tremblay ("Inspector Tremblay") and Neil J. Harrington ("Mayor Harrington").

On August 16, 1996, plaintiffs filed in state court a First Amended Complaint alleging state-law and federal-law claims against the City of Salem, Leo E. Tremblay and Neil J. Harrington.

On September 15, 1998, plaintiffs filed in state court a Second Amended Complaint alleging state-law and federal-law claims against the City of Salem Conservation Commission and others. This was the first time a federal claim had been alleged explicitly against the City of Salem Conservation Commission.

On October 1, 1998, defendant City of Salem Conservation Commission removed to this court on federal question grounds.

On October 19, 1998, plaintiffs moved to remand (Docket No. 3).

On November 24, 1998, I issued a Memorandum and Order stating the following concerning the issue of the appropriateness of keeping the entire case here in this court:

> When the Second Amended Complaint was filed, it was reasonable for officials of the City of Salem Conservation Commission to interpret it as making either an entirely new or else a renewed claim against their subdivision of the City. It is thus reasonable to permit them to seek the legal protection to which they will be entitled if it turns out that the Conservation Commission is subject to being sued as a separate entity and not alone by means of a suit against the City itself.
>
> It may turn out to be necessary, before a final decision in this court (1) to adjudicate all the claims alleged in the Second Amended Complaint, or (2) to adjudicate the federal-law claims and remand the state-law claims, or (3) to order some more complex allocation of state-federal jurisdiction for adjudication. At present, however, I conclude (1) that plaintiff is responsible for any uncertainty about the propriety of adjudicating some or all claims in this court, (2) that the case was properly removed to this court in October 1998, and (3) that it is appropriate now to deny the motion to remand.

Docket No. 12.

On November 6, 1998, Defendant City of Salem and the City of Salem Conservation Commission filed a counterclaim against plaintiffs Craig C. Burnham and Burnham Associates (collectively "BA"). See Docket No. 10. Defendants City and SCC amended their counterclaim on December 12, 1998. See Docket No. 20.

On December 31, 1998, BA filed a Motion to Dismiss Counterclaim of City of Salem and City of Salem Conservation Commission. See Docket No. 25. That motion was granted in part and denied in part in a Memorandum and Order issued on August 12, 1999. See Docket No. 37. Counts I, III, and IV of Defendants' City of Salem and City of Salem Conservation Commission were dismissed without prejudice. Counts II (alleging a violation of Salem Zoning Ordinance that regulates "accessory buildings and structures") and V (alleging a violation of M.G.L. c. 93A) survive. See id. at 15–20.

On January 31, 2000, the defendants filed the now pending motions for summary judgment.

A case management conference was held on March 2, 2000 at which time the parties informed the court that sessions before

Judge Mazzone for alternative dispute resolution had been unproductive.

On May 23, 2000, the court heard oral arguments on the defendants' motions for summary judgment.

## B. Factual Background

Plaintiffs' Second Amended Complaint brings a civil action against the City of Salem, Massachusetts, the City of Salem Conservation Commission, Leo E. Tremblay (the Inspector of Buildings for the City of Salem), and Neil J. Harrington (Mayor of the City of Salem) for a declaratory judgment and damages, alleging that over the course of four years the defendants wrongfully denied the plaintiffs various permits, licenses, and certificates of occupancy in an effort to drive the plaintiffs off their property.

Specifically, plaintiffs assert that from 1992 to 1996 defendants continually harassed, hindered, and delayed the work of plaintiffs by: (1) wrongfully removing plaintiffs' mooring and tackle from the North River; (2) denying a waterways license for 14 Franklin Street; (3) wrongfully denying a building permit for 14 Franklin Street; (4) filing a meritless Wetlands complaint against plaintiffs; (5) filing a meritless contempt complaint against plaintiffs; (6) wrongfully placing Jersey barriers at 70A North Street; (7) wrongfully denying an occupancy permit for 14 Franklin Street; (8) refusing to allow plaintiffs to repair a broken water main at 14 Franklin Street; (9) attempting to shut off electrical service to 14 Franklin Street; (10) wrongfully denying a waterways license for 70A North Street; (11) wrongfully denying a paint storage permit for 14 Franklin Street; and (12) filing twelve meritless criminal complaints against plaintiffs.

Plaintiffs state that the denial of permits, licenses, and certificates of occupancy was a violation of their procedural and substantive due process rights and constituted a taking without just compensation under the United States Constitution and the Massachusetts Declaration of Rights. In addition, plaintiffs claim that the second through tenth criminal complaints brought against them were brought for ulterior purposes and constituted an abuse of process.

Plaintiffs also state that defendants' continuing conduct threatens further losses to plaintiffs' business. Plaintiffs seek a declaratory judgment under M.G.L. c. 231A establishing that defendants' past and present conduct constitutes a violation of plaintiffs' rights under Articles 10 and 12 of the Massachusetts Declaration of Rights and the United States Constitution. Plaintiffs also request injunctive relief, compensatory and punitive damages, and attorneys fees and costs.

## III. Summary Judgment Standard

Summary judgment should be granted only where the court, viewing the evidence in the light most favorable to the non-moving party, determines that no genuine dispute of material fact exists. *See* Fed. R.Civ.P. 56. The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record showing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Then the non-moving party must demonstrate that "*every essential element* of its claim or defense is at least trialworthy." *Price v. General Motors Corp.,* 931 F.2d 162, 164 (1st Cir.1991)(italics in original).

## IV. Procedural Due Process (Count I)

### A. Relevant Facts

Plaintiffs allege that the City of Salem, Mayor Harrington, and Inspector Tremblay violated plaintiffs' right not to be deprived of property without due process of law, as it is protected by the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983. *See* Second Amended Complaint ¶¶ 110–112.

Specifically, plaintiffs point to the conduct by the City, Mayor Harrington, and Inspector Tremblay that is described below as examples of constitutional violations. The following chronicle of events is based on defendants' and plaintiffs' Rule 56.1 submissions of *un*disputed facts. As to those facts over which a dispute exists, I consider and recite them in a light most favorable to the plaintiffs.

1. *Denial of Waterways Amnesty License for 14 Franklin Street*

On or about March 1993, for the purpose of repairing an existing seawall at 14 Frankling Street, BA filed an application for a waterways amnesty license with the Massachusetts Department of Environmental Protection. *See* Docket No. 53 (Concise Statement of Material Facts as to Which There is No Genuine Issue to Be Tried) at 4; *see id.*, Exh. I (General Waterways Application of Franklin Street Realty Trust). The application requires that the "appropriate municipal official," *i.e.*, the local zoning enforcement officer, Inspector Tremblay, sign off as to the zoning of the premises. *See id.* Inspector Tremblay would not sign the application, however, because he was advised by the City Solicitor that the City disputed the legal use of 14 Franklin Street. *See* Docket No. 53, Tremblay depo. Exh. C at 126–130. Thus, BA filed a complaint with the Land Court requesting a preliminary injunction that would require Inspector Tremblay to sign plaintiff's waterways application. *See id.* Exh. J. The Land Court, Justice Sullivan, ruled in favor of the plaintiff on his application for a preliminary injunction and against the motion to dismiss filed by the defendants City of Salem, Mayor Harrington, and Inspector Tremblay. *See id.* By an order dated May 20, 1993, Justice Sullivan ordered the City of Salem, its attorneys, agents, and Inspector Tremblay to

execute the plaintiff's application fo a waterways license ... but only to evidence that the repair of the seawall is not in contravention of the local Zoning Ordinance.... [T]he City may, if it so elects, state that the City disputes the use of the premises ... I leave for a motion for summary judgment or to the trial a determination as to whether the plaintiff has or must exhaust his administrative remedies and whether the denial of the building permit can stand.

*See id.*, Exh. J at 2–3.

In October 1993, the City and the SCC pursued the dispute against BA regarding the legal use of 14 Franklin Street by filing suit alleging violations of the Wetlands Protection Act and seeking declaratory relief regarding its jurisdiction over 14 Franklin Street. As a consequence, also at issue was BA's entitlement to the waterways license. *See id.* Exh. K.

On November 8, 1999, Justice Bohn, Jr. issued his decision in the case of *City of Salem et al. v. Craig C. Burnham, et al.*, Essex Superior Ct. No. 93–2587–B. *See id.* Exh. H. In his findings of fact and rulings of law, Justice Bohn determined, among other matters not relevant here, (1) that the SCC, under M.G.L. c. 131, § 40 (the Wetlands Protection Act) has jurisdiction over 14 Franklin Street; and (2) that BA did not violate the Wetlands Protection Act. Justice Bohn also ordered the SCC to withdraw its opposition to the waterways amnesty license sought by BA and to issue a positive order of conditions or a certificate of compliance (effectively turning the preliminary injunction issued by Justice Sullivan in Land Court into a permanent remedy). *See id.*

2. *Denial of Building Permit for 14 Franklin Street*

On or about April 8, 1993, BA applied for a building permit to erect an office building at 14 Franklin Street. *See* Docket No. 58, Exh. L. Inspector Tremblay refused to issue the permit because of the legal disputes between the City and BA regarding the legal use of the property. *See* Docket No. 59, Tremblay depo., Exh. D at 16–18. BA took the matter to the

Massachusetts Land Court, seeking to compel the issuance of the permit. On November 7, 1994, Justice Kilborn ruled in favor of BA and ordered that the permit for the use as described in the 1993 application be issued. *See id.* Exh. O at 14–15.

A building permit for 14 Franklin Street was issued according to the terms of the 1993 application and Justice Kilborn's Order dated November 7, 1994.

### 3. *Denial of Occupancy Permit at 14 Franklin Street*

On June 14, 1996, Inspector Tremblay denied BA an occupancy permit for 14 Franklin Street for failure to conform to zoning ordinances. *See id.* Exh. U, ¶ 8, Exh. C at 103–106. BA then filed suit in Land Court to compel the issuance of the occupancy permit. This time, however, on a motion for partial summary judgment, by decision issued on January 30, 1998, Justice Kilborn ruled that the building as erected at 14 Franklin Street, under the previous building permit that had been compelled by his November 7, 1994 order, did not conform to the current use for which the nearly-completed building is contemplated.

> As now used, the new building in part houses an allowed use (office) but in part unlawful uses (industrial storage), and the unlawful part cannot ... be justified as prior nonconforming use.
>
> Plaintiffs' argument ... as to the effect of [my] 1994 judgment is not correct. That judgment ordered the issuance of a building permit for an office building, a matter described in more detail in paragraphs 17 through 19 of the 1994 decision.... [N]othing in the 1994 decision and judgment validates a use of the storage in the office building for uses unauthorized under the zoning ordinance. There was no consideration given to the storage area in the 1994 decision and judgment. The holding was, simply, that an office building was an authorized use, that the building pro-

posed met dimensional requirements, and that, therefore the city could not prevent the building. Plaintiffs do not succeed on the basis of issue preclusion and collateral estoppel....

> Plaintiffs' motion for partial summary judgment is denied. The city's request for summary judgment is allowed to the extent that I rule, as stated above, that the use of part of the new building for industrial storage ... is illegal.

*See id.* Exh. P at 11–13.

The record before me contains no evidence as to whether the Occupancy Permit for 14 Franklin Street was ever issued.

### 4. *Impeding the Repair of the Broken Water Main at 14 Franklin Street*

On October 15, 1996, BA obtained a street opening permit from the City Engineering Department, signed by Assistant Director of Public Services, in order to connect the new building at 14 Franklin Street to Salem's water and sewer system. *See id.* Exh. X. On the same day, October 15, 1996, the City Engineer, Charles Quigley, issued a Cease and Desist order regarding the water main repair the permit was issued to allow. City Engineer Quigley stated in his order that the Cease and Desist Order is "a result of advice, a directive from the City's Attorney, concerning your project [at 14 Franklin Street]." *Id.* Exh. X. All work stopped on the water main.

On October 23, 1996, BA filed suit in Essex Superior Court against the City Engineer and the City seeking damages and injunctive relief compelling the City to allow the water hook up to his building. *See id.* at Exh. BB (*Craig C. Burnham et al. v. Charles Quigley, et al.,* Civil Action No. 96–2188B). After a hearing on October 30, 1996, BA's motion for a temporary restraining order and preliminary injunction was denied. Reconsideration was also denied on November 26, 1996. *See id.* Exh. CC (BA's Motion for Reconsideration denied on the margin by Justice Welch). By

order of Justice Irwin, dated August 13, 1997, the suit has been consolidated with Land Court Case No. 238654 and remains pending. *See id.* Exh. DD.

### 5. *Electrical Service Stoppage to 14 Franklin Street*

On April 18, 1997, the attorney for the City called the Massachusetts Electric Company to request that electricity to 14 Franklin Street be terminated for building code violations, one of which was occupying the building without an occupancy permit. BA filed suit in Essex Superior Court requesting that the Massachusetts Electric Company be enjoined from disconnecting electrical service to 14 Franklin Street. *See id.* Exh. GG (*Craig C. Burnham, Trustee of the Franklin Street Realty Trust v. Massachusetts Electric Company,* Civil Action No. 97–747). On May 5, 1997, BA's request for an interlocutory order on its preliminary injunction was granted. *See id.* BA was ordered to pay $50.00 and Massachusetts Electric Company was ordered "enjoined and restrained from discontinuing or otherwise interfering with the electric service at 14 Franklin Street, Salem, Essex County." *Id.* The City has since intervened in the case, which has been consolidated before Justice Kilborn and remains pending. *See id.* Exh. DD (Order of Assignment by Justice Irwin dated 8/13/97).

### 6. *Denial of Waterways License for 70A North Street*

In August 1997, BA applied for a waterways amnesty license for repair work at 70A North Street. On September 9, 1997, Attorney Daly, representing the SCC, sent a letter to the Massachusetts Division of Wetlands and Waterways to inform him that the SCC and the City of Salem were intervening in BA's application for a waterways license because of zoning violations at BA's property at 70A North Street.

The record before me contains no evidence as to whether the Waterways License for 70A North Street was ever issued.

### 7. *Denial of Paint Storage Permit*

Several times during 1997, BA applied for a permit under M.G.L. c. 148, § 13, to store paint at 14 Franklin Street. *See, e.g.,* Docket No. 59, Exh. HH. On September 19, 1997, City Solicitor Daly informed both the City Clerk, who is in charge of processing permits to store flammable material and explosives, and the City Fire Chief that disputes concerning the legal use of 14 Franklin Street remain unresolved and are pending in Superior Court. City Solicitor Daly's recommendation to both the City Clerk and the Fire Chief was that "[u]ntil the issues regarding the legality of the structures are resolved in Superior Court, the application to store flammable materials within them should not be processed." *Id.* Ex JJ; *see also* Docket No. 59, Exh. GG. In a follow up letter, City Solicitor Daly wrote to the same City Clerk that since their last correspondence,

> Craig Burnham's attorney has provided me with a copy of the Application for License which Mr. Burnham intends to submit. This application states that Mr. Burnham was just to store 20,000 pounds of paint in a storage box located at 14 Franklin Street. He does not intend to store this paint within the building or trailer which are the present subject of litigation. Accordingly, as attorney for the City it is my advice that you accept and process this application in normal course.

> Although Mr. Burnham must still show zoning compliance in terms of the storage box, he will have the opportunity to submit plans prior to the notification of the abutters and public hearing.

*Id.*

The record before me contains no evidence as to whether the permit to store paint at 14 Franklin Street was ever issued.

\* \* \* \* \* \*

Plaintiffs' Rule 56.1 Statement of Disputed Facts does not oppose defendants' Statement of Undisputed Facts, which is the source of the majority of the above chronicle of events. On the contrary, plaintiffs' Rule 56.1 statement concedes that "plaintiffs and defendants do not disagree on the majority of the underlying facts that comprise the City of Salem's ... efforts to remove Craig C. Burnham ... and Burnham Associates .... from Salem." Docket No. 59 at 1. The gravamen of plaintiffs' contention that a genuine dispute of material fact exists is that all five counts of their Second Amended Complaint require a jury finding of the defendants' "motive or intent." Plaintiffs stated that their

> claims are anchored to the main disputed material fact now at issue: [t]he defendants' motive or intent to vigorously pursue the plaintiffs.... The facts that comprise the underlying acts are, for the most part, not in dispute, and independent of the defendants' motivation, are irrelevant.

> It is, however, the frequency of the defendants actions, often without a scintilla of evidence to support their decision, that is the focus of the instant dispute.... [M]otive and intent are areas reserved for the jury...

> The totality of the interactions between the City and Burnham and Burnham Associates demonstrates a concerted effort on the part of the City to chase Burnham and Burnham Associates out of Salem.

Docket No. 59 at 1, 2–3.

Plaintiffs fails to cite any legal support for the proposition that bad faith alone, on the part of a municipality, violates the procedural due process guarantee in the Constitution. As I will explain further in the section that follows below, although some of the evidence in the record before would provide a basis for a jury inference that the City, the SCC, Mayor Harrington, and Inspector Tremblay were, at a minimum, attempting to frustrate plaintiffs' business objectives, no evidence exists in the record from which a reasonable jury could infer that the plaintiffs were not provided with the fair process of the state court system in which to adjudicate their grievances with the defendants. In fact, the evidence in the record demonstrates that on several occasions, *see, e.g.,* Part IV.A.1, 2, 5 above, the plaintiffs successfully brought their grievances to state court and prevailed. For these reasons and those explained more fully below, plaintiffs did not suffer any procedural due process violations for the defendants' acts recited in detail above.

## B. Procedural Due Process Analysis

■ To avoid summary judgment on a procedural due process claim, plaintiffs must show (1) that they had a property interest defined by state law; and (2) that defendants, acting under the color of state law, deprived them of that interest without adequate process. *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); *Licari v. Ferruzzi,* 22 F.3d 344, 347 (1st Cir.1994).

That plaintiffs had a right to all of the permits and licenses that they applied for is a dubious proposition in view of the permissive scope of most of the statutes under which the permits and licenses are issued and the discretion town zoning boards are generally afforded in making determinations that lead to the issuance of such permits and licenses. *See, e.g., Chongris v. Board of Appeals of the Town of Andover,* 811 F.2d 36, 43 (1st Cir.1987); *Take Five Vending, Ltd. v. Town of Provincetown,* 415 Mass. 741, 746–47, 615 N.E.2d 576, 580–81 (1993). Assuming the validity of this proposition, however, the key issue is whether plaintiffs were afforded adequate process. *See Licari,* 22 F.3d at 347.

If plaintiffs argue that defendants illegally departed from the state and municipally mandated procedures for procuring licenses and permits, the Supreme Court

has held that in such circumstances the failure to provide pre-deprivation processes does not violate the Due Process Clause. *See Parratt v. Taylor*, 451 U.S. 527, 543, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *PFZ Properties, Inc. v. Rodriguez*, 928 F.2d 28, 31 (1st Cir.1991). The question would be whether post-deprivation processes were available to the plaintiffs' to remedy the alleged constitutional violation. *See Creative Environments v. Estabrook*, 680 F.2d 822, 832 n. 9 (stating that "where a state has provided reasonable remedies to rectify a legal error by a local administrative body ... due process has been provided"), *cert denied*, 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982). *See also Zinermon v. Burch*, 494 U.S. 113, 126, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) ("The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not compete unless and until the State fails to provide due process.")

If plaintiffs argue, instead, that their right to procedural due process continues to be violated by what plaintiffs contend is a City-sponsored campaign to drive the plaintiffs out of Salem, plaintiffs' argument rests not on the illegality of the pre-deprivation procedures in place at the City and administrative level, but on their ineffectiveness. In other words, plaintiffs argument is not with the pre-deprivation procedures as they are prescribed, but with the pre-deprivation procedures as they were administered in this case. In fact, Plaintiffs do not allege, nor have they proffered any evidence to suggest, that before any "deprivation" they may have suffered, they were not given notice or an opportunity to be heard on the issue. On the contrary, on many occasions, for example with regard to the near shut-off of electricity, the plaintiffs were afforded the opportunity to file for a temporary restraining order, which they did and on which they prevailed. Plaintiffs claim only that the pre-deprivation procedures were ineffective because the defendants were committed to putting the plaintiffs out of business and running them out of Salem.

Both arguments require me to determine whether the "process that the State provided ... [to remedy the alleged deprivation at the municipal and administrative level, either by providing illegal or ineffective pre-deprivation procedures] was constitutionally adequate. This inquiry would examine ... any remedies for erroneous deprivations provided by statute or tort law." *Zinermon* 494 U.S. at 126, 110 S.Ct. 975. *Cf. Miller v. Town of Hull, Mass.*, 878 F.2d 523, 531 (1st Cir.1989) (reiterating that the holding in *Creative Environments* was not "that the availability of state administrative and court remedies barred [§ 1983 claims]" but that the "run of the mill dispute between a developer and a town planning agency do[es] not state a due process claim" and that "a different situation may be presented, in some instances, particularly in the realm of equal protection, involving gross abuse of power, invidious discrimination or fundamentally unfair procedures ... [or] ... fundamental constitutional rights")(citing *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886) and *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973)).

■ The record before me is replete with examples of how the plaintiffs effectively litigated their case against the City, the SCC, Mayor Harrington, and Inspector Tremblay in Massachusetts state court: plaintiffs' application for a waterways amnesty license for 14 Franklin Street was compelled by the Justice Sullivan's decision in 1993; plaintiffs' building permit for 14 Franklin Street was compelled by Justice Kilborn's November 7, 1994 order; plaintiffs litigated the City's denial of the occupancy permit for 14 Franklin Street in state court; plaintiffs brought suit in state court to compel the reissuance of the street opening permit at 14 Franklin Street to allow the repair of the water main; plaintiffs successfully prevented the City from having the electricity turned off

at 14 Franklin Street. In fact, plaintiffs have not alleged that the available remedies under Massachusetts law for the alleged constitutional infractions on the part of the defendants are inadequate according to the constitutional guarantee of procedural due process. They allege only, and the facts considered in a light favorable to plaintiffs support only, the following determination: that the plaintiffs were forced to take their grievances with the defendants to state court in order to procure some of the permits to which they contend they were entitled because the defendants' considered the plaintiffs' business an "eyesore" and bad for the town of Salem. The failure on plaintiffs' part to allege the absence of adequate state court remedies is alone enough to require judgment for the defendants on the procedural due process claim. *See Zinermon,* 494 U.S. at 125–26, 110 S.Ct. 975; *Roy v. City of Augusta, Me.,* 712 F.2d 1517, 1523 (1st Cir.1983) (stating that if federal courts were to entertain civil rights complaints based on procedural deprivations for which adequate state remedies exists, "every disgruntled applicant could move [its procedural grievances] into the federal courts . . . [,] any meaningful separation between federal and state jurisdiction would cease to hold and forum shopping would become the order of the day"). Had plaintiffs' made an allegation that the state court procedure was constitutionally deficient, however, the record before me of constant and on-going litigation in state court between the parties—the outcome of which was, at times, in plaintiffs' favor—would wholly refute such a claim.

Should any doubt exist as to the adequacies of Massachusetts' post-deprivation remedies, it is answered by the provision under the Massachusetts General Laws for an appeal to the Board of Appeals for disputes over building permits, to which BA in fact appealed. *See* M.G.L. c. 143, § 100; Docket No. 58, Exh. TT. *See also* M.G.L. c. 30A, § 14 (providing for judicial review in state court of the propriety of the State Building Code Appeals Board's determination); M.G.L. c. 249, § 4 (providing for the right of certiorari to Supreme Judicial Court). The fact that relief afforded by these available processes may be delayed and the fact that the plaintiffs failed to avail themselves of some processes do not render the processes constitutionally inadequate. *See Daniels v. Williams,* 474 U.S. 327, 339, 106 S.Ct. 662, 88 L.Ed.2d 662(1986) (stating that when the state law provides a constitutionally unobjectionable system of recovery for the deprivation of property, and when there is no other challenge to the State's procedures, a valid § 1983 claim is not stated) (Stevens, J. concurring); *Licari,* 22 F.3d at 348 (stating that plaintiff "misses the mark by arguing that [state] remedies are insufficient solely because relief might be delayed, and damages are unavailable"); *Chongris v. Board of Appeals,* 811 F.2d 36, 40 (1st Cir.) *cert. denied* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 765 (1987) (stating that "where state procedures—though arguably imperfect—provide a suitable form of pre-deprivation hearing coupled with the availability of meaningful judicial review, the Fourteenth Amendment guarantee of procedural due process is not embarrassed").

Finally, plaintiffs cannot prevail on the unsupported contention that "motive or intent" is an issue for the jury when a procedural due process violation has been alleged. *See Quinn v. Bryson,* 739 F.2d 8, 9 (1st Cir.1984), which is exemplary of precedent controlling this court, that holds to the contrary. *See id.* (restating its previous holding that a "mere bad faith refusal to follow state law in . . . local administrative matters simply does not amount to a deprivation of due process where the state courts are available to correct the error")(quotation marks omitted). The plaintiffs have not alleged that the defendants' actions rose to the level of invidious discrimination or that defendants abridged plaintiffs' fundamental constitutional rights. *See Miller v. Town of Hull, Mass.,* 878 F.2d 523, 529–530 (1st Cir.

1989); *Creative Environments,* 680 F.2d at 832 n. 9 (citing *Yick Wo* and *Roe v. Wade* as examples of invidious discrimination and abridgement of fundamental constitutional rights the allegations of which might rise to the level of a procedural due process claim under section 1983 when state remedies are nevertheless available to complainants). Furthermore, had plaintiffs' made an allegation, for example, that defendants' actions rise to the level of impermissible discrimination, the record, considered in a light most favorable to the plaintiffs, permits no such determination.

No triable jury issue having been shown as to plaintiffs' claim of denial of procedural due process, plaintiffs cannot sustain their section 1983 claim against the City, the SCC, Mayor Harrington, or Inspector Tremblay. Defendants make other arguments in defense of plaintiffs' procedural due process-section 1983 claim, *e.g.,* a *Monell* defense and absolute immunity defense, *see* Docket No. 50 at 4–11 and Docket No. 52 at 8–15, but I do not reach those issues in light of my conclusion that plaintiffs have suffered no procedural due process violation in light of adequate state remedies. Defendants' motion for judgment as a matter of law on Count I, plaintiffs' procedural due process claim, will therefore be allowed.

## V. Substantive Due Process (Count II)

### A. Relevant Facts

Plaintiffs rehearse the same litany of alleged egregious acts on the part of the defendants City, Mayor Harrington, and Inspector Tremblay as chronicled above in Part IV.A. to support their substantive due process claim. In addition, however, they add the following events. As required under the summary judgment standard, I recite these facts in a light favorable to the plaintiff.

### 1. *Criminal Complaints Lodged Against Plaintiffs*

On December 20, 1993, Inspector Tremblay filed an Application for a criminal complaint against BA claiming that BA had violated certain City of Salem zoning ordinances. *See* Docket No. 58, Exh. R; Docket No. 53, Exh. Q. The complaint survived a motion to dismiss. *See* Docket No. 58, Exh. Q (Memorandum of Decision and Order of Sullivan, J., dated 6/14/94). The matter was resolved when the Assistant District Attorney entered a nolle prosequi in November 1994.

On February 2, 1996, Inspector Tremblay filed an application for a complaint against BA alleging violations of City of Salem zoning ordinances at 14 Franklin Street. *See* Docket No. 53, Exh. S; Docket No. 58, Exh. U. Although probable cause was found, the complaint was not prosecuted and the matter was dismissed.

On April 17, 1996, Inspector Tremblay again filed an application for a complaint against BA alleging continued violations of City of Salem zoning ordinances. *See* Docket No. 53, Exh. S; Docket No. 58, Exh. V. This complaint also was dismissed after the City opted not to proceed against BA.

Plaintiffs do not dispute that Inspector Tremblay, on behalf of the City, chose not to prosecute some of these complaints of zoning violations to completion because BA represented that the violations of which they had been accused would stop. *See* Docket No. 53, Exh. D at 72, 88, 90, 93.

On April 17, 1997, Inspector Tremblay filed application for a complaint against BA alleging violation of City of Salem zoning ordinances at 14 Franklin Street on 2/19/96. On July 21, 1997, Inspector Tremblay filed application for a complaint against BA alleging violation of City of Salem zoning ordinances at 14 Franklin Street on 4/28/97. *See* Docket No. 53, Exh. JJ (Criminal Case Nos. 9736 CR 1265 and 9736 CR 2319). According to the Affidavit of the then-City Solicitor Kevin Daly, *see id.,* Exh. F at 1–3, these complaints were nolle prossed on September 3, 1997, because of clerical errors in the wording of the complaint, and were refiled on Septem-

ber 9, 1997 naming he same violations. On January 2, 1998, probable cause was found as to both applications and the criminal complaints issued. Trial was to have commenced on these two complaints in April 5, 2000. *See id.* at 3.

In January 1997, the SCC, through its attorney, requested that the Salem Police Department investigate wetlands violations at BA's property at 70A North Street. After Captain Harold Blake of the Salem Police Department conducted an investigation into the matter, he issued citations to BA for wetland violations. Hearings were held and after probable cause was found, the official complaints issued. *See* Docket No. 53, Exh. LL (Blake Depo. at 15, 24–26) and Exh. MM (Criminal Complaint Nos. 9736 CR 4002 and 9736 CR 4003). Nothing in the record before me indicates how or whether this matter is being resolved.

### 2. *Civil Complaint Lodged Against the Plaintiffs*

On September 6, 1995, the City filed a complaint for contempt in Land Court against BA alleging that BA was in violation of Justice Kilborn's Order. *See* Docket No. 58, Exh. T; Docket No. 53, Exh. R. The complaint was dismissed on procedural grounds.

### B. Substantive Due Process Analysis

In contrast to a procedural due process analysis, "a substantive due process claim implicates the essence of state action rather than its modalities; such a claim rests not on the idea that the government's conduct, regardless of procedural swaddling, was in itself impermissible." *Amsden v. Moran,* 904 F.2d 748, 753 (1st Cir.1990). With respect to the substantive due process claim, plaintiffs' main contention of "motive or intent" becomes central.

The Court of Appeals has provided the following guidance when parsing a substantive due process claim at summary judgment:

Wordplay aside, we agree with Judge Friendly that, in the circumscribed precincts patrolled by substantive due process, it is only when some basic and fundamental principle has been transgressed that "the constitutional line has been crossed." As distinguished from its procedural cousin, then, a substantive due process inquiry focuses on "what" the government has done, as opposed to "how and when" the government did it. And although the yardstick against which substantive due process violations are measured has been characterized in various ways, we are satisfied that, before a constitutional infringement occurs, state action must in and of itself be egregiously unacceptable, outrageous, or conscience-shocking.

*Id.* at 754 (citations omitted). In a very recent case, *Cruz–Erazo v. Rivera–Montanez,* 212 F.3d 617 (1st Cir.2000), the Court of Appeals for the First Circuit looked closely at the varieties of substantive due process claims brought under section 1983 for their viability of stating and proving a constitutional violation.

Although the cases in which we have found governmental conduct to shock the conscience have often involved state action that was highly physically intrusive, *see* [*Brown v.*] *Hot, Sexy & Safer Productions,* 68 F.3d [525,] 531 [ (1st Cir.1995) ] (and cases cited therein), we have pointedly left open the possibility that verbal or other less physical harassment such as that alleged by appellants might rise to a conscience-shocking level.

The question now before the court is whether the particular conduct alleged by appellants in this case was so egregious that it can properly be said, under these circumstances, to shock the conscience. We find the question to be a close one, as the alleged facts seem to fall in between the extremes of conduct which have previously been found to shock or not to shock the judicial conscience.

*Id.* at 621, (some citations omitted).

In *Cruz–Erazo*, the plaintiffs, home-owners who had generously offered to the defendants (police officers) their unoccupied dwelling for storage during a hurricane warning, alleged that the same and other police officers verbally harassed them, occupied their home without permission, deliberately lied on official documents, and perjured themselves in official court proceedings with intention of causing the plaintiffs further harm. The Court of Appeals in *Cruz–Erazo* then distinguishes a number of cases on factual grounds. *See id.* at 621–23 *citing Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952) (conscience-shocking state action found where a suspect's stomach was forcibly pumped to obtain evidence); *Hot, Sexy and Safer Productions*, 68 F.3d at 532 (no substantive due process violation where public school students were required to attend a sexually explicit AIDS awareness assembly); *Souza v. Pina*, 53 F.3d 423 (1st Cir.1995) (no substantive due process violation when a murder suspect committed suicide after prosecutors encouraged the media to link him to a series of murders); *Harrington v. Almy*, 977 F.2d 37, 43–44 (1st Cir.1992) (conscience-shocking state action where a suspended police officer was required to undergo a penile plethysmograph as a condition of reinstatement); *Pittsley v. Warish*, 927 F.2d 3 (1st Cir. 1991) (no conscience-shocking conduct when police officers threatened to kill mother, told mother's four-year-old and ten-year-old children that if their father was caught they would never see him again, and refused to allow the children to give their father a goodbye hug when he was arrested); *Grendell v. Gillway*, 974 F.Supp. 46 (D.Me.1997) (conscience-shocking conduct when officer lies to and threatens an eleven-year-old girl in order to extract incriminating information about the suspected drug use of her parents). In concluding that the plaintiffs in *Cruz–Erazo* failed to state a claim of substantive

due process violation, the Court of Appeals said that

> [a]lthough each determination of whether state conduct "shocks the conscience" is necessarily fact-specific and unique to the particular circumstances in which the conduct occurred, we think that our precedents steer us toward the conclusion that appellants have failed to articulate a claim under the Fourteenth Amendment. The majority of the conduct alleged by appellants was not physically intrusive or violent, nor did it "strike at the basic fabric" of any protected relationship in *Grendell*. In fact, we find appellants' allegation largely comparable to those presented in *Pittsley*, and appellants have offered us no basis whatsoever for finding that precedent distinguishable, nor have they offered any substantive argument or explanation to justify the unusual step of finding a violation of substantive due process. As in previous decisions, we expressly leave open the question of whether verbal harassment and intimidation of this general type might, under appropriate circumstances, be found to violate due process. We simply hold that appellants have failed to state such a claim in this case.

*Id.* at 623.

In light of the recent reiteration by the Court of Appeal for the First Circuit of the standard under which a substantive due process claim is correctly analyzed, I cannot say that the facts in the record before me, even taking what plaintiffs say to be true—that the City of Salem and through its officers engaged in a crusade to chase the plaintiffs out of town—present a jury issue concerning the plaintiffs' right to substantive due process. Even were I to assume, as plaintiffs suggest is true, that the defendants acted in bad faith in their capacities as town officials in denying licenses and permits to the plaintiffs, "mere bad faith refusal to follow state law in such local administrative matters simply

does not amount to a deprivation of due process where the state courts are available to correct the error" even when the "defendant's improper conduct [claimed to be the due process violation] was motivated by the defendants' goal of compelling [plaintiff] to reduce the size of the project." *See Chiplin Enters.*, 712 F.2d at 1528. "Such a motive might be illegitimate as a matter of state law, but it is not a basis for a § 1983 claim." *Id.*

Consider the First Circuit's instructive analysis in *Licari*, a case arising from circumstances similar to those before me, in which a developer brings suit against the town and planning officials for impeding the development project over the course of four years.

> [Plaintiff's] substantive due process claims are based on the same factual allegations · underlying the procedural due process claims, *i.e.*, the revocation of the building permits, the unauthorized issuance of enforcement orders, and the delays in the processing and approval of [plaintiff's] application for an amended permit. Those acts allegedly manifest "a persistent and consistent hostility and animus toward [plaintiff]," aimed at coercing [plaintiff] to reduce the size of the project.

> This Court has repeatedly held . . . that rejections of development projects and refusals to issue building permits do not ordinarily implicate substantive due process. There is nothing in the record to differentiate this case from those in which we have found no viable basis for a § 1983 claim. We note that [plaintiff] has neither argued, nor offered evidence that defendants' "hostility and animus" was aimed at any political affiliation, belief, stance, or immutable characteristic of [plaintiff]. Rather, [plaintiff's] brief states that defendants' improper conduct "was motivated by the defendants' wrongful, outrageous goal" of compelling it to reduce the size of the project. *Cf. Creative Environments,* 680 F.2d at 833 ("Every appeal . . . from an adverse ruling by a . . . planning board · necessarily involves some claim that the board exceeded, abused or 'distorted' its legal authority . . . , often for some allegedly perverse (from the developer's point of view) reason.") . . .

> There is a sound basis for our approach to such claims in land use planning disputes:

>> Substantive due process, as a theory for constitutional redress, has . . . been disfavored, in part because of its virtually standardless reach. To apply it to claims [alleging that permitting officials were motivated by political factors and parochial views of local interests] would be to insinuate the oversight and discretion of federal judges into areas traditionally reserved for state and local tribunals.

> We are not persuaded by [plaintiff] that the allegations and evidence in this case distinguish it from *Nestor Colon* and the other cases in this circuit rejecting substantive due process claims in similar disputes. In *Amsden*, 904 F.2d at 757, for example, in deciding an issue of qualified immunity, we stated that plaintiff had not produced evidence of conduct so "shocking or violative of universal standards of decency" as to violate the Due Process. Clause, although the evidence suggested that plaintiff's license was revoked to force his partner out of business. Defendants' conduct in this case, allegedly designed to· force plaintiff to reduce the size of its project, is similarly not sufficiently "conscious-shocking." We hold that the district court properly granted summary judgment on the due process claims.

*Licari*, 22 F.3d at 349–351 (some quotation marks and citations omitted).

Plaintiffs urge me to consider the whole record "viewed in the totality of the circumstances" and that the sheer amount of confrontations between the parties over the course of nearly seven years "represent a truly horrendous situation, one in which this Court should provide relief."

(Docket No. 58 at 26 *citing Nestor Colon,* 964 F.2d at 45 for "truly horrendous" language). I accept plaintiffs' assertion that the record demonstrates an on-going feud between town officials and BA. But even in light of the twelve criminal complaints lodged against the plaintiffs, most of which were dismissed or nolle prossed, plaintiffs have failed to demonstrate anything more than persistent and indefatiguable attempts by town officials—officials who have deemed it in the town's best interest to get rid of the "eyesore" that is BA's marina, *see* Docket No. 58, Exh. P—to hinder the growth of BA's business, or, at a minimum, to keep it within the regulatory guidelines set by the building and zoning codes and the environmental protection laws. *See Cruz–Erazo,* at 620 (stating with approval the district court's statement of law that "[t]here is no substantive due process right under the Fourteenth Amendment to be free from malicious prosecution"). *See also Roche v. John Hancock Mut. Life Ins. Co.,* 81 F.3d 249, 256 (1st Cir.1996).

Under the controlling precedent of this circuit and the Supreme Court, what is clearly a hostile and bitter feud between a town and one of its citizen-businesses nevertheless does not rise to the level of a substantive due process violation. Without a constitutional violation, plaintiffs have nothing to try before a jury with regard Count II. In other words, plaintiffs cannot demonstrate a genuine dispute of material fact that would allow a reasonable jury to find that the defendants engaged in conscience-shocking behavior. Section 1983 therefore provides no remedy against any of the defendants. I will therefore allow defendants' motion for judgment as a matter of law on Count II.

As in Part IV above, although defendants City and SCC assert in defense of plaintiffs' substantive due process claim a *Monell* defense, among others, *see* Docket No. 50 at 4–11, and defendants Mayor Harrington and Inspector Tremblay assert a qualified immunity defense, among oth-

ers, *see* Docket No. 52 at 11–16, I do not reach these issues in light of my conclusion that plaintiffs have demonstrated no jury issue regarding "conscience-shocking" conduct in light the relevant case-law and governing standard.

## VI. Taking Without Just Compensation (Count IV)

### A. Relevant Facts

Plaintiffs allege in Count IV of their Second Amended Complaint that "by the above conduct [alleged in ¶¶ 1–109] defendant City of Salem deprived the plaintiffs of the temporary and permanent use of their property without just compensation, in violation of the plaintiffs' rights as protected by the Fifth and Fourteenth Amendments of the United States Constitution and Article 10 of Massachusetts Declaration of Rights." Second Amended Complaint ¶ 118.

In addition to the chronicle of events above in Part IV with regard to the denial of licenses and permits, plaintiffs allege that the following two incidents constitute a taking without just compensation.

### 1. *Removal of Mooring*

In September 1992, the Mayor Harrington asked the Salem Harbormaster, Andrew Syska, to investigate the plaintiffs' compliance with the city and state ordinance regulating moorings and anchors in the North River. Pursuant to that investigation that turned up violation of M.G.L. c. 102 § 21, 24 and the Port of Salem Harbor and Mooring Regulations, in December 1992, the harbormaster removed one mooring from the North River.

> The mooring has no identification number or mooring permit number issued by the Harbormaster Dept. and is believed to belong to Burnham Associates who was ordered to remove this mooring by September 30, 1992. The mooring was removed by Quality Marine Services and placed into the custody of the Harbor-

master Department until further development.

Docket No. 53, Exh. E (Harbormaster Incident Report dated 12/2/92). Before removing the mooring, however, the Harbormaster Department sent two letters to plaintiffs notifying them of the fact that their non-compliance with Massachusetts laws and Salem Regulation would result in court action. *See id.* (attached letters dated 9/2/92 and 10/22/92). In particular, the letters stated that BA was violating state and local laws by (a) not filing an application with the Harbormaster Department to moor, anchor or store [a] barge and equipment in the North River and (b) keeping a boat at the mooring that exceeded 47 feet.

By plaintiffs' admission, the mooring was replaced within ten days. *See id.* Exh. B at 421–423. Plaintiffs have proffered a mooring permit application valid from April 10, 1992 for the mooring in dispute; the application allows for a boat no bigger than 47 feet. *See* Docket No. 58, Exh. B. Plaintiffs also say that for those ten days, they had to moor their tug in Gloucester and incurred expense in doing so. *See id.* Exh. B at 423.

On October 23, 1993, after the City pursued criminal sanctions against BA for continuing violation of Massachusetts and local laws regarding BA's ongoing mooring activities, Justice Cornetta of the Essex Superior Court, dismissed the criminal charges finding

> [u]nder the facts as presented in this case, the Commonwealth may well have remedies available to it for management of Salem Harbor and its environs via another use zoning ordinance, pursuant to conservation, coastal zone management or state public works/waterways ordinances, regulations or statutes or in consultation with federal authority exercised by the Army Corp of Engineers. However, I find the ordinance relied upon by the Commonwealth in this complaint is insufficient, silent and /or vague and cannot sustain a criminal conviction on the offenses charged.

*Id.* Exh. F (Order and Findings in *Commonwealth v. Burnham Associates, Inc.,* Civil Action 9386 JC 1586, Peabody Jurisdiction, Essex Superior Court, Cornetta, J.).

### 2. Jersey Barriers

At his deposition, Craig Burnham states that five jersey barriers were placed near or on his property at 70A North Street in June 1996 by the former Director of Public Services for Salem, Charles Quigley, on order from the Mayor's office. *See id.* Exh. B at 535–542. Only two or three of the barriers were on the plaintiffs' property. *See id.* The barriers were removed the following day. *See id.* Burnham claims that Quigley apologized for the inconvenience. *See id.* It is not clear from the record how or if the jersey barriers impeded the plaintiffs' business for that day.

### B. Taking Analysis

> Plaintiffs' principal argument is that the City's various attacks on the use of [plaintiffs'] properties worked as a regulatory taking. The City's behavior exceeded normal regulation, "the inconveniences of which individuals in a civilized society must bear, [and went] so far that it impermissibly [took] their property for public use without just compensation, in violation of the Takings Clause."

Docket No. 58 at 28 citing *Philip Morris, Inc. v. Harshbarger,* 159 F.3d 670, 674 (1st Cir.1998).

The protection that the Fifth Amendment affords—that private property shall not be taken for public use without just compensation—is not restricted to physical invasions. "In some cases, overly assiduous government regulation can create an unconstitutional taking." *Houlton Citizens' Coalition v. Town of Houlton,* 175 F.3d 178, 190 (1st Cir.1999). The Supreme Court in *Lucas v. South Carolina Coastal Council* set forth the current standard under which to analyze regulatory takings.

The first encompasses regulations that compel the property owner to suffer a physical "invasion" of his property. In general (at least with regard to permanent invasion), no mater how minute the intrusion, and no mater how weighty the public purpose behind it, we have required compensation.... The second situation in which we have found categorical treatment appropriate is where regulation denies all economically beneficial or productive use of land. As we have said on numerous occasions, the Fifth Amendment is violated when land-use regulation "does not substantially advance legitimate state interests or denies an owner economically viable use of his land."

*Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1015–1016, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) (citations omitted). "Whether a particular restriction implicates the Takings Clause is context-sensitive and hinges on specific circumstances.... In mounting such inquiries, courts must weigh especially the character of government action, its economic impact on the plaintiff, and the degree to which it interferes with the plaintiff's reasonable, investment-backed expectations." *Houlton,* 175 F.3d at 190 (*citing Philip Morris,* 159 F.3d at 674).

Plaintiffs concede at page 29 of their Opposition that the City has the right to enact legitimate land-use regulation. I note also that the City has the right to enforce what its officials consider to be violations of that legitimate land-use regulation. Plaintiffs nevertheless assert that without proving anything more they are entitled to relief on the ground that the "City's action ... constituted a taking" because City's actions do not "substantially advance legitimate state interests" as required by *Nollan v. California Coastal Comm'n,* 483 U.S. 825, 834, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987).

Given the undisputed fact that the plaintiffs remain in business and continue to run their marine contracting business out of the two properties around which this dispute centers, I cannot say, under the guidance provided by *Lucas* and First Circuit precedent decided after *Lucas,* that BA has suffered a "taking" when it has not been "called upon to sacrifice all economically beneficial uses" of its property. The alleged regulatory taking at issue in *Lucas* was considerably more drastic than that compelled by the licensing and permitting at issue here.

■■ With regard to the mooring incident, plaintiffs have conceded that the regulation at issue is reasonable and legitimate in light of the City's and state's duties in regulating the waterways. The fact that the mooring was confiscated on purpose or by error in an effort to enforce the regulation does not tip the legitimate interest calculation in favor of the plaintiffs. Furthermore, plaintiffs have not demonstrated that they have an independent property right in the uninterrupted use of the mooring at issue, a prerequisite to a finding that a taking without just compensation has occurred. *See Eastern Enterprises v. Apfel,* 524 U.S. 498, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998); *see also Parella v. Retirement Bd. of Rhode Island Employees' Retirement System,* 173 F.3d 46, 58 (1st Cir.1999)(stating that when the various opinions in Eastern Enterprises, are "read as a whole ... [they] make clear that plaintiffs must first establish an independent property right before they can argue that the state has taken that right without just compensation"). Also, assuming *arguendo* that the plaintiffs did have a property right in the uninterrupted use of the mooring or the permit to use the mooring, I conclude that if plaintiffs challenge the state and local regulatory schemes that allow the harbormaster to confiscate the moorings or the permits to use the moorings in the face of possible violations of their use, plaintiffs must proffer some evidence regarding the three factors the Supreme Court precedent has isolated as particularly important when evaluating whether a governmental

action is a regulatory taking: economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the governmental action. *See, e.g., Kaiser Aetna v. United States*, 444 U.S. 164, 175, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979). *See also Philip Morris*, 159 F.3d at 674. Plaintiffs have proffered no such evidence.

■ Another point must be considered. The placement of the jersey barriers, although a physical occupation by the City on plaintiffs' property, was not a permanent occupation requiring compensation, as in *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982) (determining that the New York's law requiring landlords to allow television cable companies to emplace [sic] cable facilities in their apartment buildings constituted a taking even though the facilities occupied at most only 1½ cubic feet of the landlords' property). Plaintiffs have alleged no harm aside from what they claim to be the "harassment" element of the intrusion. Under these circumstances, I conclude that no jury could reasonably find that a taking had occurred under the Fifth Amendment of the Constitution.

No jury issue having been shown with regard to whether plaintiffs suffered a taking without just compensation due to defendant City's licensing and permitting activities and the placement of the jersey barriers, I will grant defendants' motion for summary judgment with regard to Count IV. Nothing in *Monterey v. Del Monte Dunes*, 526 U.S. 687, 119 S.Ct. 1624, 143 L.Ed.2d 882(1999) persuades me otherwise.

## VII. Abuse of Process (Count III)

We reach the claim of abuse of process (Count III) only if the one of the other federal counts (Counts I, II and IV) must go to the jury. Otherwise no federal law claims remain. I will remand this last state-law issue, along with Count V for declaratory judgment under M.G.L. c.

231A. Remand is proper since the abuse of process count and the declaratory judgment count concern the applicability of state and town zoning laws, not something a federal district court should ordinarily be reviewing absent any viable constitutional attack on them.

## ORDER

For the reasons stated in the foregoing Memorandum, it is ORDERED:

(1) Defendants' City of Salem and City of Salem Conservation Commission Motion for Summary Judgment (Docket No. 49, filed January 31, 2000) is GRANTED;

(2) Defendants' Neil J. Harrington and Leo E. Tremblay Motion for Summary Judgment (Docket No. 51) is GRANTED;

(3) The Clerk is directed to enter on a separate document a Final Judgment as follows:

> For the reasons stated in the Memorandum and Order of May 24, 2000, judgment is for the defendants on Counts I, II, and IV. Counts III and V are remanded to the state court from which this case was removed.

### Final Judgment

For the reasons stated in the Memorandum and Order of May 25, 2000, judgment is for the defendants on Counts I, II, and IV. Counts III and V are remanded to the state court from which this case was removed.