USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-2047 ARTHUR J. LICARI, AS HE IS TRUSTEE OF COLONIAL DRIVE REALTY TRUST, Plaintiff, Appellant, v. JOSEPH FERRUZZI, PATRICK J. McNALLY, STANLEY I. BORNSTEIN, KENNETH J. SAVOIE WILLIAM E. BINGHAM, CATHERINE LEFEBVRE, ELIZABETH WARE AND THE TOWN OF IPSWICH, Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Rya W. Zobel, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Paul F. Denver, with whom Rossman, Rossman & Eschelbacher were on ______________ ________________________________ brief for appellant. Patrick M. Hamilton, with whom Richard E. Brody and Morrison, ____________________ _________________ _________ Mahoney & Miller were on brief for appellees Patrick J. McNally, __________________ Stanley I. Bornstein, Kenneth J. Savoie, William E. Bingham, Catherine Lefebvre, Elizabeth Ware and the Town of Ipswich, Nancy Merrick, with _____________ whom Douglas I. Louison and Merrick & Louison were on brief for ___________________ __________________ appellee Joseph Ferruzzi. ____________________ April 22, 1994 ____________________ BOWNES, Senior Circuit Judge. This appeal arises BOWNES, Senior Circuit Judge. _____________________ from an action for damages brought by a developer frustrated by town planning and permitting authorities. Plaintiff- appellant, Arthur J. Licari, as trustee of Colonial Drive Realty Trust (hereinafter "Colonial"), appeals from an order granting summary judgment for defendants-appellees, the Town of Ipswich, the town building inspector, the town planner, and members of the planning board. The complaint alleged due process violations under 42 U.S.C. 1983, as well as violations of Massachusetts civil rights laws and tortious interference with contract. We affirm the decision for defendants on the 1983 claims, but vacate the judgment on the pendent state claims and remand so that those claims will be adjudicated, or dismissed without prejudice. I. I. BACKGROUND BACKGROUND __________ In 1987, Colonial's predecessor in interest sought to develop property in Ipswich, Massachusetts, and obtained a "special permit" from the planning board to comply with town zoning laws.1 One part of the project included three buildings. The building plans incorporated into the special permit stated that Building 3 would be set back ____________________ 1. A special permit is analogous to a variance. Under Massachusetts law, a town's zoning ordinances may allow particular developments, such as multifamily dwellings, to be constructed in a given zoning district only upon the issuance of a special permit. Mass. Gen. Laws ch. 40A, 9. -2- 2 "approximately forty-five (45) feet" from the road. Colonial acquired three building permits and began construction in 1988. At a hearing held on October 12, 1989, the planning board discussed whether the location of Building 3 conformed with the dimensions in the plans incorporated in the special permit. One week later, the town planner wrote to Colonial that Building 3 was seven feet closer to the road than the special permit allowed. The letter requested Colonial's confirmation or denial of those charges, in writing, before the next board meeting on October 26 and stated that any further work would be at the developer's risk. The record does not indicate whether Colonial attended that meeting or submitted any information to the board. During the October 26 meeting, the board issued and later recorded at the registry of deeds a "Notice of Noncompliance," based on the discrepancy between the special permit and the location of Building 3. Building 3's proximity to the road was discussed in planning board meetings over the following months. Members of the board informed Colonial at a hearing in November 1989 that Buildings 1 and 2 also contravened the special permit. In November 1989, Colonial sought an amendment to the special permit to cure the problems, but the board did not approve that application until April 2, 1990. Meanwhile, on February -3- 3 1, 1990, Colonial once again argued to the board that there were no discrepancies between the special permit and the project as built. On February 2, 1990, defendant Joseph Ferruzzi, the town building inspector, revoked all three building permits and ordered that further work cease. The reasons for the revocation were that the buildings did not conform with the special permit, and that Colonial had represented in applying for building permits that the project was in compliance with "project documents" and with zoning requirements. According to Colonial, the board ordered the permits revoked. Colonial initiated, but later abandoned, an appeal of Ferruzzi's action to the Massachusetts Building Code Appeals Board. Until new building permits were issued, work on the project could not continue, and bank financing was suspended. In May 1990, Ferruzzi promised to issue new permits, but did not actually issue them until August. The bank's financing commitment also expired in August. Colonial failed to complete the project and defaulted on its loan. In January 1993, Colonial filed suit in the United States District Court for the District of Massachusetts. The complaint alleged that Ferruzzi and the town failed to provide due process by revoking the building permits without a proper inquiry, notice, or hearing. The complaint included claims that the arbitrary acts of defendants other than -4- 4 Ferruzzi violated Colonial's due process rights. Finally, the complaint alleged that defendants interfered with Colonial's contractual relations, and that defendants violated Massachusetts civil rights laws. Defendants filed a motion for summary judgment, which the district court granted. II. II. ISSUES ISSUES ______ Colonial argues on appeal [1] that the district court erred in granting summary judgment on the 1983 claims; [2] that the court erred in denying Colonial's motion for leave to engage in discovery under Fed. R. Civ. P. 56(f); and [3] that the court erred in granting summary judgment for defendants on the state law claims. We consider those arguments seriatim. ________ The first issue is whether the district court erred in granting summary judgment on the federal due process claims. Our review of the district court's order is de novo. __ ____ Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F.2d ______________________________________ ________ 32, 39 (1st Cir. 1992). Summary judgment is proper where no material facts are in dispute, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Defendants argue that summary judgment was proper because this case is analogous to our line of cases upholding -5- 5 pretrial orders disposing of 1983 due process claims brought by frustrated applicants against local permitting officials. See, e.g., Nestor Colon, 964 F.2d 32; PFZ ___ ____ ____________ ___ Properties, Inc. v. Rodriguez, 928 F.2d 28 (1st Cir. 1991), ________________ _________ cert. dismissed, 112 S. Ct. 1151 (1992); Creative Env'ts, _____ _________ ________________ Inc. v. Estabrook, 680 F.2d 822 (1st Cir.), cert. denied, 459 ____ _________ _____ ______ U.S. 989 (1982). We agree. In this case, as in those cases, the procedural and substantive due process claims were not actionable under 1983. III. III. DUE PROCESS CLAIMS DUE PROCESS CLAIMS __________________ To avoid summary judgment on a procedural due process claim, Colonial must show [1] that it had a property interest defined by state law; and [2] that defendants, acting under color of state law, deprived it of that interest without adequate process. PFZ Properties, 928 F.2d at 30. A ______________ viable substantive due process claim requires proof that the state action was "in and of itself . . . egregiously __ ___ __ ______ unacceptable, outrageous, or conscious-shocking." Amsden v. ______ Moran, 904 F.2d 748, 754 (1st Cir. 1990) (emphasis in _____ original), cert. denied, 498 U.S. 1041 (1991). Procedural _____ ______ due process guarantees that a state proceeding which results in a deprivation of property is fair, while substantive due process ensures that such state action is not arbitrary and capricious. Id. at 753-54. ___ -6- 6 A. Revocation of Building Permits A. Revocation of Building Permits ______________________________ Colonial argues that its right to procedural due process was violated when defendant Ferruzzi, at the planning board's behest, revoked the building permits in violation of state law without prior notice and a hearing. Ferruzzi acted under color of state law; the letter revoking the permits cited the discrepancies between the special permit and the project as built and stated that he could "revoke a permit . . . in case of any false statement or misrepresentation of fact in the application or the plans on which the permit . . . was based." 22 Mass. Regs. Code tit. 780, 114.7. Because we assume for the purposes of this opinion that Colonial held a property interest in the permits, see PFZ ___ ___ Properties, 928 F.2d at 30-31, the key issue is whether __________ Colonial was afforded adequate process. To determine whether a procedural due process violation has occurred, "it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure . . . effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law." Zinermon v. Burch, 494 U.S. 113, 126 (1990). We assess the ________ _____ adequacy of procedures by balancing the government's interest against the private interest affected by the action, the risk -7- 7 of an erroneous deprivation, and the value of additional safeguards. Mathews v. Eldridge, 424 U.S. 319, 335 (1976). _______ ________ We begin our analysis by describing the procedural protections afforded Colonial. Prior to the deprivation, Colonial was notified of the board's allegations and had an opportunity to rebut them. We take as true Colonial's claim that the planning board was the ultimate decisionmaker because it ordered the permits revoked. Colonial was notified at planning board meetings in October and November 1989, by a letter from the town planner in October, and by the "Notice of Noncompliance" filed at the registry of deeds in November that there were alleged discrepancies between the plans incorporated in the special permit and the project as built. Those allegations underlay the finding that there were false statements in the building permit application. Colonial had an opportunity to contest those allegations with respect to Building 3 during the October 12 hearing and in the two weeks preceding the planning board's issuance of the Notice of Noncompliance. Although it is unclear from the record whether Colonial actually responded to those allegations, it is enough to satisfy the Due Process Clause that the opportunity for such a response existed. Furthermore, on February 1, 1990, Colonial disputed the allegations with respect to all three buildings, several -8- 8 months after receiving notice of them, and one day prior to the revocation. The notice Colonial received prior to the revocation never specifically informed it that the inconsistency between the special permit and the project might be a basis for finding a "misrepresentation" in the building permit application, justifying the revocation of the permits. Colonial argues that it was thereby denied an opportunity to be heard on that issue. We disagree. First, Colonial received a letter from the town planner describing the discrepancy between the special permit and the location of Building 3 and indicating that further work would be at the developer's risk. That letter, the Notice of Noncompliance, and later discussions with the board informed Colonial that town officials deemed the discrepancies significant. Furthermore, Ferruzzi's letter revoking the building permits claimed that plans submitted to him prior to the issuance of the permits stated that the project complied with zoning and with "project documents." A letter from Colonial's architect appended to Colonial's Opposition to Defendants' Motion for Summary Judgment supports that statement of the facts, and nothing in the record contradicts it. Cf. 22 Mass. Regs. Code tit. 780, 113.5 (application ___ for building permit must include site plans). Finally, a state regulation authorized Ferruzzi to revoke building -9- 9 permits based on false statements in building permit applications.2 Id. 114.7. The existence of that ___ regulation, the warning in the planner's letter, the repeated discussions with the board, and the contents of plans submitted on Colonial's behalf to the building inspector provided Colonial with sufficient notice and an opportunity to respond. There is a further reason why the revocation of the building permits did not violate Colonial's right to procedural due process: postdeprivation remedies were available. See Zinermon, 494 U.S. at 126 ("The ___ ________ constitutional violation actionable under 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process."). Colonial had numerous opportunities to meet formally and informally with town officials to recover the permits. See ___ Amsden, 904 F.2d at 755 (informal negotiations are part of ______ process provided). Such negotiations ultimately yielded the result Colonial desired, the issuance of new permits. Moreover, Colonial had the right to an administrative appeal ____________________ 2. An affidavit of Jason Sokolov, Colonial's attorney before the planning board, states, "On information and belief, th[e] accusation [of a misrepresentation in the building permit application] was untrue." We express no opinion on whether, as a matter of state law, those statements in the plans submitted to Ferruzzi constituted "misrepresentation[s] of fact in the [building permit] application." 22 Mass. Regs. Code tit., 780 114.7. -10- 10 of the building inspector's decision, which could have been heard by the zoning board of appeals or by the state Building Code Appeals Board, and a right to judicial review thereafter. See 22 Mass. Regs. Code tit. 780, 126.1, ___ 126.6; 126.7.1. Colonial misses the mark by arguing that those remedies are insufficient solely because relief might be delayed, and damages are unavailable. In the first place, delays, while endemic to administrative and judicial fora, are minimized in these proceedings because the Appeals Board adheres to a timetable. 22 Mass. Regs. Code tit. 780, 126.3.4, 126.4.3. Furthermore, a damage remedy is not an essential component of constitutionally adequate review procedures. Chongris v. Board of Appeals, 811 F.2d 36, 44-45 ________ ________________ (1st Cir.), cert. denied, 483 U.S. 1021 (1987). We conclude _____ ______ that Colonial had sufficient notice and an opportunity to be heard prior to the revocation, and adequate administrative and judicial review procedures afterwards; no further process was exigible. Id. at 40. ___ B. Notice of Noncompliance B. Notice of Noncompliance _______________________ Colonial adverts that the planning board violated procedural due process by summarily issuing and recording at the registry of deeds a Notice of Noncompliance, which stated that Colonial's buildings did not comply with the requirements of the special permit. That issue appears in -11- 11 the brief without citation to legal authority, and with scant elaboration on whether or how the board's act affected any property right. We express no opinion on the merits because we deem it waived. "Issues adverted to on appeal in a perfunctory manner, unaccompanied by some developed argumentation, are deemed to have been abandoned." Gamma _____ Audio & Video, Inc. v. Ean-Chea, 11 F.3d 1106, 1113 (internal ___________________ ________ quotation marks and citation omitted). C. Delays C. Delays ______ Colonial contends that the board's delay in approving the application for an amended special permit violated its right to procedural due process. Assuming that Colonial held a property interest in the permit prior to its issuance, and that the delay itself constituted a "deprivation," we disagree with Colonial's contention. We take as true the allegation that the delay resulted from defendants' unauthorized intransigence and illegal demands. We have rejected similar 1983 claims, however, where--as in this case--the deprivation was unauthorized, the value of further process was negligible, and the state provided adequate remedies. E.g., Nestor Colon, 964 F.2d at 40; PFZ ____ ____________ ___ Properties, 928 F.2d at 31; see also Mass. Gen. Laws ch. 40A, __________ ___ ____ 9 (failure of permitting board to act on permit application within 90 days after public hearing deemed to be approval of -12- 12 application); id. 17 (final decisions of permitting board ___ subject to expedited judicial review). D. Substantive Due Process Claims D. Substantive Due Process Claims ______________________________ The substantive due process claims are based on the same factual allegations underlying the procedural due process claims, i.e., the revocation of the building permits, ____ the unauthorized issuance of enforcement orders, and the delays in the processing and approval of Colonial's application for an amended permit. Those acts allegedly manifest "a persistent and consistent hostility and animus ______ toward [Colonial]," aimed at coercing Colonial to reduce the size of the project. "This Court has repeatedly held . . . that rejections of development projects and refusals to issue building permits do not ordinarily implicate substantive due process." PFZ Properties, 928 F.2d at 31; see also, e.g., ______________ ___ ____ ____ Creative Env'ts, 680 F.2d at 832 n.9, 833. There is nothing _______________ in the record to differentiate this case from those in which we have found no viable basis for a 1983 claim. We note that Colonial has neither argued, nor offered evidence that defendants' "hostility and animus" was aimed at any political ______ affiliation, belief, stance, or immutable characteristic of Colonial. Rather, Colonial's brief states that defendants' improper conduct "was motivated by the defendants' wrongful, outrageous goal" of compelling it to reduce the size of the -13- 13 project. Cf. Creative Env'ts, 680 F.2d at 833 ("Every appeal ___ _______________ _____ . . . from an adverse ruling by a . . . planning board necessarily involves some claim that the board exceeded, abused or `distorted' its legal authority . . ., often for some allegedly perverse (from the developer's point of view) reason. It is not enough simply to give these state law claims constitutional labels . . . in order to raise a substantial federal question under section 1983." (emphasis in original)). Colonial argues that this court should "overrule" the cases in this circuit rejecting substantive due process claims in local planning disputes, so that its claims might be litigated. Colonial contends that there are cases from other circuits permitting 1983 actions based on arbitrary or capricious conduct by local land use officials, and that this court should follow suit in this case. See, e.g., ___ ____ Littlefield v. City of Afton, 785 F.2d 596 (8th Cir. 1986) ___________ _____________ (collecting cases). But see Lemke v. Cass County, 846 F.2d ___ ___ _____ ___________ 469, 470-71 (8th Cir. 1987) (en banc) ("Whether a substantive due process claim may arise from a denial of a zoning permit is an open question in this circuit . . . ."). There is a problem with Colonial's argument that goes beyond its assumption that this panel would overrule precedent in this circuit: we have never announced a rule precluding district courts from finding substantive due -14- 14 process violations by land use planning officials in every _____ conceivable case. Rather, "[o]ur cases make clear that a regulatory board does not transgress constitutional due process requirements merely by making decisions `for erroneous reasons' or by making `demands which arguably exceed its authority under the relevant state statutes.'" Amsden, 904 F.2d at 757 (quoting Creative Env'ts, 680 F.2d at ______ _______________ 832 n.9); see also, e.g., Chiplin Enters. v. City of Lebanon, ___ ____ ____ _______________ _______________ 712 F.2d 1524, 1528 (1st Cir. 1983). "We have left the door slightly ajar for federal relief [based on substantive due process] in truly horrendous situations." Nestor Colon, 964 ____________ F.2d at 45. Nevertheless, "the threshold for establishing the requisite `abuse of government power' is a high one indeed." Id. ___ There is a sound basis for our approach to such claims in land use planning disputes: Substantive due process, as a theory for constitutional redress, has . . . been disfavored, in part because of its virtually standardless reach. To apply it to claims [alleging that permitting officials were motivated by political factors and parochial views of local interests] would be to insinuate the oversight and discretion of federal judges into areas traditionally reserved for state and local tribunals. Id. ___ We are not persuaded by Colonial that the allegations and evidence in this case distinguish it from -15- 15 Nestor Colon and the other cases in this circuit rejecting ____________ substantive due process claims in similar disputes. In Amsden, 904 F.2d at 757, for example, in deciding an issue of ______ qualified immunity, we stated that plaintiff had not produced evidence of conduct so "shocking or violative of universal standards of decency" as to violate the Due Process Clause, although the evidence suggested that plaintiff's license was revoked to force his partner out of business. Id. (internal ___ quotation marks and citation omitted). Defendants' conduct in this case, allegedly designed to force Colonial to reduce the size of its project, is similarly not sufficiently "conscious-shocking." Id. at 754. We hold that the district ___ court properly granted summary judgment on the due process claims. -16- 16 IV. IV. DENIAL OF RULE 56(f) MOTION DENIAL OF RULE 56(f) MOTION ___________________________ Colonial argues that the district court erred in denying its motion under Fed. R. Civ. P. 56(f) for leave to engage in discovery. The district court stated that it was denying the motion because "defendants are entitled to judgment as a matter of law." "To satisfy Rule 56(f), a party must `articulate a plausible basis for the belief that discoverable materials exist which would raise a trialworthy issue.'" Nestor Colon, ____________ 964 F.2d at 38 (citation omitted). With respect to the federal claims that we consider in this appeal, Colonial's motion asserted that discovery would yield evidence of defendants' "animus" towards Colonial, and evidence of what defendants "knew or believed" about the location of the three buildings. We consider whether the denial of the motion was an abuse of discretion. Id. ___ We find no abuse of discretion in this case because the evidence sought by Colonial is not the type that would render the 1983 claims viable. Colonial alleged that defendants' improper conduct was motivated by the defendants' goal of compelling it to reduce the size of the project. Such a motive might be illegitimate as a matter of state law, but it is not a basis for a 1983 claim. See Chiplin ___ _______ Enters., 712 F.2d at 1528. Similarly, there would be no _______ -17- 17 basis for relief under 1983, even if discovery yielded proof that defendants knew that the buildings conformed with the special permit. Id. ("A mere bad faith refusal to follow ___ state law in such local administrative matters simply does not amount to a deprivation of due process where the state courts are available to correct the error."). Consequently, we conclude that the district court did not err in denying the Rule 56(f) motion. V. V. DISMISSAL OF STATE CLAIMS DISMISSAL OF STATE CLAIMS _________________________ Finally, we consider whether judgment was properly entered on the pendent state law claims. The district court's summary judgment order consists of the following notation on the first page of defendants' motion: "Allowed, Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32 (1st Cir. 1992), PFZ Properties, Inc. v. Rodriguez, 928 F.2d 28 (1st Cir. 1991). Judgment may be entered for defendants." We read that order as resting on Nestor Colon ____________ and PFZ Properties, not as an endorsement of all arguments in ______________ defendants' brief. The reference to Nestor Colon and PFZ Properties _____________ ______________ makes clear that the district court considered Colonial's 1983 claims. Nothing, however, indicates that the state civil rights and tort claims were weighed. That adequate state appeals procedures and remedies might protect a -18- 18 developer's federal due process rights, and thus preclude 1983 litigation, see Nestor Colon, 964 F.2d at 40, 45; PFZ ___ ____________ ___ Properties, 928 F.2d at 31-32, is not germane to Colonial's __________ state law claims. Although there is no indication that the district court ever considered the pendent claims, the court's order effectively dismissed those claims with prejudice. The court's order on those claims was an abuse of discretion. Defendants have not answered the complaint; there is support in the record for the pendent claims; and Colonial has not yet had the opportunity to engage in discovery. Consequently, while we affirm the judgment on the 1983 claims, we vacate the judgment on the state law claims and remand the case so that those claims will be adjudicated, or dismissed without prejudice. See 28 U.S.C. 1367(c) ___ (district court may decline to exercise jurisdiction over pendent claims if it has dismissed all federal claims); Mercado-Garcia v. Ponce Federal Bank, 979 F.2d 890, 896 (1st ______________ __________________ Cir. 1992); Figueroa Ruiz v. Alegria, 896 F.2d 645, 650 (1st _____________ _______ Cir. 1990). It is so ordered. It is so ordered. _________________ -19- 19