# United States Court of Appeals
## For the First Circuit

No. 15-1140

GLOBAL TOWER ASSETS, LLC; NORTHEAST WIRELESS NETWORKS, LLC,

Plaintiffs, Appellants,

v.

TOWN OF ROME; ROME PLANNING BOARD,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Barron, Selya, and Lipez,
Circuit Judges.

Erica M. Johanson, with whom Neal F. Pratt, Jonathan A. Pottle, and Eaton Peabody, were on brief, for appellants.
Theodore Small, with whom Issacson & Raymond, P.A. was on brief, for appellees.

January 8, 2016

**BARRON**, **Circuit Judge**. The Telecommunications Act of 1996 ("TCA") provides relief to those who are denied permission to build telecommunications facilities at the state or local level. The TCA makes such relief available if state or local land use authorities have denied such permission through "final action." The TCA, however, does not define what counts as "final action." The result has been disputes -- like this one -- over whether a denial is a "final action."

We have considered this issue once before. We held then that a local zoning board's denial of a special use permit and variance to build a wireless tower did constitute "final action." We recognized that the board's denial could have been reviewed in state court under state law at the time that the TCA claim had been filed. But we explained that Congress did not intend to make TCA relief available only once that judicial process had run its course. We concluded that the zoning board's denial counted as "final action" because the denial marked the end of the administrative process. As a result, we permitted the TCA claim to proceed as a challenge to "final action." See Omnipoint Holdings v. City of Cranston, 586 F.3d 38 (1st Cir. 2009).

This time the issue is somewhat different. It concerns whether the administrative process itself has come to an end. The issue arises because the appellants filed their TCA challenge to

- 2 -

a local planning board decision at a time when that decision was still subject to further review by a local board of appeals.

The appellants contend that the opportunity to bring an administrative appeal should not prevent their TCA challenge from going forward. But, in keeping with basic principles of administrative law and the purposes of the TCA, we disagree. As a matter of state law, the planning board's denial may be reviewed in state court only after the local board of appeals has exercised its own independent review. As a result, we agree with the appellees -- the planning board and the Town of Rome, Maine -- that the planning board's decision does not mark the end of the administrative process and thus is not a "final action" for TCA purposes.

We thus affirm the District Court's dismissal of appellants' TCA claims. We also affirm the District Court's dismissal of appellants' separate federal constitutional due process challenges, as we hold that the complaint failed to plead facts sufficient to state such claims.

**I.**

The appellants are Northeast Wireless Networks, LLC and Global Tower Assets, LLC ("Applicants"). Northeast Wireless holds a Federal Communications Commission ("FCC") license to provide personal communications service -- a form of wireless communications technology -- in and around the Town of Rome, Maine

- 3 -

("Rome"), which is one of the two appellees. Global Tower is a company that assists wireless companies with locating and constructing wireless communications towers.

Together, the Applicants acquired a leasehold interest in land in Rome, on which land they seek to build a wireless communications tower. Rome regulates the siting of wireless towers via the "Town of Rome Wireless Telecommunications Facility Siting Ordinance" (the "Ordinance").

The Ordinance requires applicants first to seek permission to build from the Rome Planning Board (the "Planning Board"), which, along with Rome, is the other appellee. The Ordinance further provides that "[a]dministrative appeals and variance applications submitted under this Ordinance shall be subject to the standards and procedures established by the Town of Rome Board of Appeals" (the "Board of Appeals").

On April 8, 2013, the Applicants sought permission from the Planning Board to build the tower. The Planning Board held its first meeting to discuss the application on May 20, 2013. Over the course of the next several months, the Planning Board held a number of additional meetings.

During this time, the Applicants objected repeatedly to the Planning Board's procedures and to what the Applicants perceived to be bias against the siting of the tower on the part of Planning Board members whom the Applicants allege belonged to

a local private organization, the Belgrade Region Conservation Association (the "BRCA"). Over the course of the application process, the Applicants and the Planning Board agreed on four occasions to extend the deadline for the Planning Board to make its decision on the application.

February 10, 2014, was the final day of the last agreed upon extension. On that day, the Planning Board met, deliberated, and voted to (a) adopt some of the findings of fact and conclusions of law that the Planning Board's counsel had prepared in advance, (b) adopt some of the specific findings included in section 10 of the Ordinance, and (c) find that the application comported with some of the requirements set forth in section 11 of the Ordinance.

The Planning Board then conducted a "completeness review," during which the Planning Board determined that the Applicants had not submitted written evidence of the need for the tower. Lastly, the Planning Board voted to deny the Applicants' application. Twenty-eight days later, on March 10, 2014, the Planning Board issued a one page "decision" that memorialized the February 10 votes.

The next day, the Applicants filed suit in the United States District Court for the District of Maine. The complaint alleged various claims under the TCA, the Due Process Clause of the United States Constitution, and Maine law, both statutory and constitutional.

As to the TCA, the complaint alleged that the Planning Board's decision violated the requirements of § 332(c)(7)(B) in that the decision (1) unreasonably discriminated against the providers of functionally equivalent services; (2) had the effect of prohibiting the provision of wireless services; and (3) was not "in writing and supported by substantial evidence on a written record." The complaint also alleged that the Planning Board had unreasonably delayed taking action on the application -- and thus violated § 332(b)(7)(B)(ii) -- by failing "to issue a written decision within the mutually agreed upon review period."

As to the federal constitutional claim, the Applicants alleged that the Planning Board's procedures -- including ex parte communications -- and perceived bias on the part of those Planning Board members who also belonged to the BRCA denied them a fair and impartial tribunal, as well as notice and an opportunity to be heard.

Rome moved to dismiss the complaint under both Rule 12(b)(1) and Rule 12(b)(6). Analyzing the motion under Rule 12(b)(6),[1] the District Court dismissed the majority of the TCA

---

[1] The District Court noted that in Omnipoint, 586 F.3d at 45 n.4, we left open the question of whether the TCA's "final action" requirement was jurisdictional. Global Tower Assets, 2014 WL 3784233 at *1 n.2. Finding that the result would be the same under 12(b)(1) or 12(b)(6), the District Court similarly avoided the question whether the "final action" requirement is jurisdictional and analyzed the motion under 12(b)(6). Id. We do the same.

claims, without prejudice, because the Applicants had not appealed to the Board of Appeals at the time that the Applicants filed their TCA claim. Global Tower Assets, LLC. v. Town of Rome, Me., No. 1:14-cv-00085-GZS, 2014 WL 3784233, *10 (D. Me. July 31, 2014). For that reason, the District Court held that the Planning Board's denial of the application was not a "final action" that Applicants were entitled to challenge under the TCA. Id.; see 47 U.S.C. § 332(c)(7)(B)(v).

The District Court also dismissed the unreasonable delay claim that the Applicants brought under the TCA. Global Tower Assets, 2014 WL 3784233 at *7. The District Court concluded that the Applicants failed to plead facts adequate to allege that the Planning Board had not issued a written decision. Id. ("Despite this allegation, Plaintiffs expressly allege that the Planning Board 'adopted findings of fact and conclusions of law concerning the Application' prior to the expiration of the agreed upon review period and then detail twenty-four of those findings and conclusions. Therefore, Plaintiffs' claim in paragraph 95 of the Complaint is belied by their factual own [sic] allegations.")(citations omitted)(quoting complaint).

With respect to the Applicants' Due Process claims (both procedural and substantive), the District Court dismissed them with prejudice. Id. at *11. The District Court ruled that the allegations set forth in the complaint did not rise to the level

of a federal constitutional violation.  Id.  Having thus disposed of all of the federal claims, the District Court declined to exercise supplemental jurisdiction over the remaining state law claims.  Id.  The District Court therefore dismissed those state claims without prejudice.  Id.

The Applicants now bring this appeal.  We start with their challenge to the Planning Board's denial of their application under the TCA.  We then consider their federal constitutional challenge.

## II.

The Applicants' complaint alleges that the Planning Board's decision violated the TCA because its denial unreasonably discriminated between providers of functionally equivalent services, effectively prohibited the provision of wireless services, and was not in writing or supported by substantial evidence on a written record.  See 47 U.S.C. § 332(c)(7)(B)(i)&(iii).  The dispositive question for us as to these claims, however, is whether they may be heard at all.  And resolution of that question turns on whether the Planning Board's decision constitutes a "final action . . . by a State or local government or any instrumentality thereof." Id. § 332(c)(7)(B)(v).

Resolution of that same question is also potentially determinative of the only other TCA claim that is before us: the Applicants' allegation of unreasonable delay under 47 U.S.C. §

332(c)(7)(B)(ii).  This claim rests on the Applicants' allegation that the Planning Board never issued a written decision, as § 332(c)(7)(B)(iii) requires.

The "written decision" requirement appears to apply, however, only to actions that are "final" within the meaning of the TCA.  Indeed, it would be odd for that requirement to apply to an interim decision.  The only decisions that may be challenged under the TCA, after all, are ones that are "final."  Nor do the Applicants make any developed argument to the contrary.  Thus, if the Planning Board's decision is not a "final action" because no appeal was taken to the Board of Appeals, then any delay in the Board's issuance of a "written decision" would be of no moment.  Rather, the only delay that might matter would be any delay resulting from the Board of Appeals' failure to have issued a timely "written decision."

The Applicants do not argue in their briefing to us, however, that they assert an unreasonable delay claim that is based on the fact that the Board of Appeals failed to take "final action" or to issue a "written decision" in a sufficiently timely fashion.  And, at oral argument, counsel for the Applicants disclaimed any intention to make such a claim on appeal.  Thus, we treat any such claim as waived.  The result is that we may affirm the District Court's dismissal of the only unreasonable delay claim that is before us on the ground that the Planning Board's denial does not

count as "final action," see Wash. Legal Found. v. Mass. Bar Found., 993 F.2d 962, 971 (1st Cir. 1993)("We may affirm the district court's order on any independently sufficient grounds."), assuming, that is, we conclude that the denial does not.

In sum, in evaluating the dismissal of the Applicants' TCA claims, we address only whether the Planning Board's denial of the application in this case constitutes "final action." And that is because our conclusion that the Planning Board's denial does not constitute "final action" suffices to support the affirmance of the dismissal of all of the TCA claims at issue in this appeal.

**III.**

Before we directly offer our reasons for reaching the conclusion that the Planning Board's denial is not "final action" under the TCA, we need to provide some important background. We thus begin by describing in more general terms what counts as "final action" under the TCA. We then apply that "final action" requirement to the case at hand.

**A.**

As usual, we start with the relevant statutory text. See Sepulveda v. United States, 330 F.3d 55, 64 (1st Cir. 2003). The TCA provides that: "Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to

- 10 -

act, commence an action in any court of competent jurisdiction."
47 U.S.C. § 332(c)(7)(B)(v).

In Omnipoint, we noted that "final action" is not defined in the TCA. 586 F.3d at 46. We explained, however, that "[t]he terms 'final' and 'final action' have special meaning in the law," and that "we assume Congress knew the content of background law when legislating." Id. (internal quotation marks and citations omitted).

Significantly, the finality of administrative action serves as a prerequisite to obtaining judicial relief under not only the TCA, but also the statute that generally governs the review of federal administrative agency action, the Administrative Procedure Act ("APA"). See Telecommunications Act of 1996, H.R.Rep. No. 104-458, at 209 (1996) (Conf.Rep.), as reprinted in 1996 U.S.C.C.A.N. 124, 223 (clarifying that "final action" means a "final administrative action at the State or local government level so that a party can commence action . . . rather than waiting for the exhaustion of any independent state court remedy otherwise required." (emphasis added)); 5 U.S.C. § 704. And the TCA uses words nearly identical to those used in the APA in setting forth its finality requirement: "final action." Compare 47 U.S.C. § 332(c)(7)(b)(v) with 5 U.S.C. § 704 (using the term "final agency action").

Thus, Omnipoint drew upon the meaning of "final" agency action under the APA in construing the TCA's own finality requirement. Id. at 45-47. And recently, the Supreme Court did the same. See T-Mobile South, LLC v. City of Roswell, Ga., __ U.S. __, 135 S.Ct. 808, 817 n.4 (2015)(relying on the Supreme Court's analysis of the APA's finality requirement in Bennett v. Spear, 520 U.S. 154, 178 (1996)). Accordingly, we follow that same course here, just as courts usually have looked to the APA's finality requirement when construing federal statutes that condition judicial review on the finality of agency action but that do not independently define what counts as final action. See Impact Energy Resources v. Salazar, 693 F.3d 1239, 1254 (10th Cir. 2012) (Seymour, J., concurring)("When interpreting the meaning of the word 'final' in statutes using that term in relation to judicial review of agencies, courts commonly apply the APA's meaning of 'final.' . . . Federal courts regularly apply the APA's meaning of 'final' to other statutes using the term in relation to judicial review of agency actions and decisions."); id. at 1262 (Tymkovich, J., dissenting)(stating that "[o]ther courts have applied the APA definition of 'final' to other statutes using that word in the context of judicial review" and collecting cases).

**B.**

In determining the meaning of the TCA's "final action" requirement, we note that a key aspect of finality under the APA

is whether the agency action at issue "mark[s] the 'consummation' of the agency's decisionmaking process" or is instead "of a merely tentative or interlocutory nature."  Bennett, 520 U.S. at 178. That was the aspect of finality that was at issue in Omnipoint, and that is the aspect of finality that is at issue here.[2]

In Omnipoint, it was easy to conclude that this aspect of finality had been satisfied.  There was no dispute in Omnipoint over whether the administrative agency -- the zoning board of review -- had come to a final and definitive judgment.  It clearly had.  The only issue was whether the availability of a state judicial remedy prevented that otherwise definitive administrative decision from qualifying as "final action."  Omnipoint, 586 F.3d at 45-46.  Because the TCA made clear that a "final action" was "a final administrative action," see id. at 47 (quoting Telecommunications Act of 1996, H.R.Rep. No. 104–458, at 209 (1996) (Conf.Rep.), as reprinted in 1996 U.S.C.C.A.N. 124, 223) (emphasis added), we held that the availability of judicial review did not suffice to strip the zoning board's decision of its finality.  Id.

Here, the case for finding finality is not so straightforward.  The Planning Board may have rendered a decision that represents its definitive judgment.  But that decision is

---

[2] The other aspect of finality, not at issue here, is whether the disputed action was "one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" Bennett, 520 U.S. at 178.

still subject to an appeal to the Board of Appeals. It is thus the prospect of relief via <u>administrative</u> (rather than judicial) appeal that grounds the contention that there has not yet been a "final administrative action." <u>See</u> Telecommunications Act of 1996, H.R.Rep. No. 104-458, at 209 (1996)(Conf.Rep.), as reprinted in 1996 U.S.C.C.A.N. 124, 223. In consequence, the case for questioning the finality of the administrative decision at issue -- the Planning Board's denial of the appellants' application to build -- is considerably stronger than it was in <u>Omnipoint</u>.

To be sure, as a general matter, Congress does not intend for the availability of additional avenues of administrative relief to prevent federal agency action from counting as "final" agency action under the APA. <u>See</u> 5 U.S.C. § 704. The Supreme Court made that much clear in interpreting the APA's final action requirement in <u>Darby</u> v. <u>Cisneros</u>, 509 U.S. 137 (1993). <u>Darby</u> explained that, as a general matter, courts may not make the exhaustion of further avenues of administrative relief that the agency may make available a precondition to securing judicial relief under the APA, such as by availing oneself of the opportunity to request reconsideration by the agency or by taking an administrative appeal that the agency may permit. <u>See</u> <u>id.</u> at 154.

<u>Darby</u> also noted, however, that the APA expressly qualifies this general rule. <u>See</u> <u>id.</u>; <u>see also</u> 5 U.S.C. § 704.

_Darby_ explained that sometimes federal agencies set up a two-stage administrative process for taking "final action," in which the agency provides by rule that an initial agency decision must be reviewed administratively before the agency intends for it to represent the agency's last word. 509 U.S. at 154; 5 U.S.C. § 704. And, _Darby_ made clear, when agencies opt to make final administrative determinations in this two-stage way, their initial administrative decisions are not "final" -- and thus not subject to judicial review under the APA -- at least if that initial agency decision has not itself altered the legal status quo. See _Darby_, 509 U.S. at 154; 5 U.S.C. § 704; _Manny Indus._ v. _Sec'y of Labor_, 432 F. Supp. 88, 89 (C.D. Cal. 1977) ("An initial decision probably should be considered inoperative even though the claim is refused, the license is denied, or the suspension order is not lifted.") (quoting 3 Kenneth Culp Davis, _Administrative Law Treatise_, § 20.08 at 106) aff'd _Manny Indus._ v. _Sec'y of Labor_, 596 F.2d 409 (9th Cir. 1979); _Attorney General's Manual on the Administrative Procedure Act_ 105 (1947); Kenneth Culp Davis, _Administrative Law Doctrines of Exhaustion of Remedies, Ripeness for Review, and Primary Jurisdiction: 1_, 28 Tex. L. Rev. 168, 193 (1949)(same).

### C.

Against this background, what remains for us to decide in construing the TCA's "final action" requirement is the following. We must decide whether there is any special reason to

construe the TCA's requirement to diverge from the APA's, such that "State[s] or local government[s] or any instrumentalit[ies] thereof," see 47 U.S.C. § 332(c)(7)(B)(v), may not reach a "final administrative action" in two stages rather than one, even though federal agencies may do so under the APA. In our view, nothing about the TCA suggests that it should be construed to break with the APA in this regard.

As we have noted, the phrasing of the TCA's finality requirement, "final action," is nearly identical to the APA's. Compare 47 U.S.C. § 332(c)(7)(b)(v)(using the term "final action") with 5 U.S.C. § 704 (using the term "final agency action"). Thus, the text of the TCA does not indicate that Congress intended to prevent state and local governments from structuring their administrative processes for making "final" determinations in the same way that the APA permits federal agencies to structure theirs.

The TCA's legislative history, moreover, accords with this interpretation of the text. The conference report to the TCA makes clear that the process through which a "final administrative action" is taken does not include the process through which a state judicial remedy may be secured. See Telecommunications Act of 1996, H.R.Rep. No. 104-458, at 209 (1996) (Conf.Rep.), as reprinted in 1996 U.S.C.C.A.N. 124, 223. In doing so, however, that report in no way suggests that states and localities are constrained in how they may choose to structure the process through which they

take "final administrative action" that may then be reviewed in court.  See id.  And, consistent with the conference report, the TCA's "design, structure, and purpose," Omnipoint, 586 F.3d at 46 (quoting Cablevision of Bos., Inc. v. Pub. Improvement Comm'n, 184 F.3d 88, 101 (1st Cir. 1999)), all support reading this statute's "final action" requirement, like the APA's, to afford government the power to make "final" administrative decisions through a two-stage process.

A key purpose of the TCA, after all, is to preserve state and local land use authority.  See ATC Realty, LLC v. Town of Kingston, N.H., 303 F.3d 91, 94 (1st Cir. 2002)(noting that the TCA embodies, in part, "the desire to preserve state and local control over zoning matters").  Indeed, the very section of the TCA that creates the relevant cause of action is entitled "Preservation of local zoning authority."  47 U.S.C. § 332(c)(7).

That purpose is obviously well served by construing the TCA to respect a state or locality's choice not to treat an initial administrative decision as the last word when that decision must be reviewed administratively before it may be reviewed judicially.  Otherwise, we would be attributing to Congress an intention to treat a local agency's decision as if it were more definitive than state or local law itself appears to treat it.  This construction of the TCA also preserves the authority of state and local land use authority in another way.  Such a construction gives state and

local actors more room to resolve land use disputes on their own, without judges intervening and imposing the federal standards that the TCA sets forth.

To be sure, another (and somewhat competing) purpose of the TCA is to ensure the availability of prompt federal statutory relief from local land use decisions that unduly impede the build-out of much needed information infrastructure. See Omnipoint, 586 F.3d at 47 ("The Act stresses the need for speedily deploying telecommunications and seeks to get prompt resolution of disputes under the Act."); ATC Realty, 303 F.3d at 94. But this purpose is not unduly frustrated by construing the "final action" requirement to permit states and localities to deploy a two-stage administrative process for rendering a decision that may then be reviewed judicially. Such a two-stage process may put off the opportunity for judicial review for a while. But that very process also may increase the chance that an otherwise erroneous denial of a building application will be identified and rectified, thereby obviating the need for initiating the lengthy judicial review process in the first place.

Finally, there is little risk that, by construing the TCA's "final action" requirement in this manner, we will enable states and localities to undermine the TCA's effective operation. The TCA's unreasonable delay provision places an outer limit on the time that a state or local government may take to come to a

"final" decision.  See 47 U.S.C. § 332(c)(7)(B)(ii).  That provision, as interpreted by the FCC, presumptively gives state and local governments only 150 days to come to a decision on applications to construct wireless facilities, subject to extension by mutual agreement.  In re Petition for Declaratory Ruling, 24 FCC Rcd. 13994, 13995 (2009); see City of Arlington, Tx. v. FCC, 569 U.S. __, 133 S.Ct. 1863 (2013) (upholding the FCC's interpretation).  And that presumptive time-limit applies no matter how cumbersome or streamlined a state or local government (or an instrumentality thereof) chooses to make its administrative process.

**D.**

The Applicants object that this reading of the TCA mistakenly conflates the concepts of finality and exhaustion.  In pressing that contention, the Applicants rely on the Supreme Court's emphasis in Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City on the distinction between those two concepts.  See 473 U.S. 172, 192-193 (1985) (explaining that "[t]he finality requirement is concerned with whether the initial decision maker has arrived at a definitive position on the issue that inflicts an actual concrete injury" while exhaustion "generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or

otherwise inappropriate").  But the Applicants are mistaken to do so.

Following Williamson County, the Supreme Court in Darby addressed how exhaustion bears on the finality requirement under the APA, and Darby did so by drawing on the distinction Williamson County drew between exhaustion and finality.  Darby, 509 U.S. at 144.  In doing so, Darby clarified that, as a general matter, federal judges may not require those aggrieved by federal agency action to exhaust additional levels of administrative review before seeking relief from "final" agency action under the APA. Id. at 153-54.  But, as we have explained, Darby then went on to make clear that the APA provides in some limited circumstances that an agency action is not final precisely because an agency rule or a statute requires that the agency action must be reviewed administratively.  See 5 U.S.C. § 704; Darby, 509 U.S. at 154. And, in such circumstances, Darby further explained, the required administrative review both imposes an exhaustion requirement and makes plain that the underlying agency action is not a "final" one.  See Darby, 509 U.S. at 154.[3]

_____

[3] Our analysis of the TCA's "final action" requirement accords with the Seventh Circuit's holding in Sprint Spectrum L.P. v. City of Carmel, 361 F.3d 998 (7th Cir. 2004), which we cited approvingly in Omnipoint, 586 F.3d at 47.  Sprint Spectrum held that a local denial of an application to build a telecommunications facility was not "final" under the TCA because the denial merely required the applicant to seek a variance.  Sprint Spectrum, 361 F.3d at 1004-05.  Sprint Spectrum did not address whether a local denial

- 20 -

Thus, in construing the TCA's "final action" requirement to accord with the APA's similar requirement, as spelled out in Darby, we do not create any tension with Williamson County. Nor do we confuse exhaustion with finality. We simply recognize, as Darby did, that sometimes these two concepts overlap. See Am. Dairy of Evansville, Inc. v. Bergland, 627 F.2d 1252, 1260 (D.C. Cir. 1980) ("[W]e note that the requirements of finality and exhaustion are inextricably intertwined."); see also Grace Community Church v. Lenox Twp., 544 F.3d 609, 614 (6th Cir. 2008)("Exhaustion and finality . . . sometimes overlap."); Franks v. Nimmo, 683 F.2d 1290, 1295 (10th Cir. 1982)("The doctrine[s] of 'finality' and 'exhaustion' are closely intertwined."). And, as Darby recognized, such overlap occurs when an agency requires an initial administrative denial of a permit to be appealed administratively before it may be deemed to be the kind of "final" administrative action that the APA permits an aggrieved party to challenge in court under that Act.[4] See Darby, 509 U.S. at 154.

---

of such an application would constitute final action under the TCA if that denial were more definitive but could only be reviewed judicially under state law after the denial had been appealed administratively. See id.

[4] We note that Sprint Spectrum looked to how Williamson County analyzed ripeness, rather than to how the finality requirement under the APA has been interpreted, in construing the TCA's "final action" requirement. Id. at 1004. In Williamson County, the Supreme Court determined that a Takings Clause claim premised on the denial of approval of a preliminary plat was not "ripe" when the local planning commission did not deny approval outright, but instead required the petitioner to seek a variance. See 473 U.S.

Against this background, we now must apply the TCA's final action requirement to the facts before us. In particular, we must resolve whether the prospect of the Board of Appeals' review of the Planning Board's denial bars that denial from qualifying as "final action" under the TCA. In keeping with the TCA's respect for the preservation of local land use authority, we answer that question by looking to both the Ordinance and Maine law.

The parties do not dispute that, as a general matter, Maine state courts may review a local land use decision like the one at issue here only after it has been reviewed by a Board of Appeals, if such a Board is in place. See Wister v. Town of Mount

---

at 186, 193-94. The Court stated that "the Commission's denial of approval does not conclusively determine whether respondent will be denied all reasonable beneficial use of its property, and therefore is not a final, reviewable decision." Id. at 194. Williamson County did also state in dicta that "respondent would not be required to appeal the Commission's rejection of the preliminary plat to the Board of Zoning Appeals, because the Board was empowered, at most, to review that rejection, not to participate in the Commission's decision making." Id. at 193. But, in making that statement, the Supreme Court was addressing only when a constitutional Takings case is "ripe" for the purposes of Article III of the Constitution, and not a statutory "final" action requirement. See id. Ripeness and finality are distinct concepts, even though they may overlap in some cases. See Unity08 v. FEC, 596 F.3d 861, 866 (D.C. Cir. 2010); 3 Pierce, Administrative Law Treatise, § 15.17. Thus, Williamson County did not address the finality issue that is relevant here. For while some agency action that is not ripe is also not final, see Sprint Spectrum, 361 F.3d at 1004-05, an action may be ripe under Williamson County even though it is not final.

<u>Desert</u>, 974 A.2d 903, 909-11 (Me. 2009)(discussing Maine law's general requirement that land use and zoning appeals are first heard by a zoning board of appeals, rather than a state court). Thus, under Maine law, Rome necessarily made review by the Board of Appeals a prerequisite to judicial review of the Planning Board's denial when Rome provided in the Ordinance that "[a]dministrative appeals . . . submitted under this Ordinance shall be subject to the standards and procedures established by the Town of Rome Board of Appeals." And so we agree with Rome and the Planning Board that, by opting for this two-stage decision making process in the Ordinance, initial administrative decisions concerning applications to build telecommunications facilities in Rome (such as the Planning Board's denial of the application here) are not the final administrative determinations that state law deems to be subject to judicial review.

Moreover, although the Ordinance does not expressly address the legal status of the Planning Board's denial of an application during the pendency of the Board of Appeals' review, it is clear that the Planning Board's denial did not itself alter the legal status quo. The Applicants could not build the tower before the Planning Board denied the application, just as they could not build the tower afterwards. <u>See</u> <u>Manny Indus.</u>, 596 F.2d at 409(affirming <u>Manny Indus.</u>, 432 F. Supp. 88); <u>see also</u> <u>Attorney General's Manual on the Administrative Procedure Act</u> 105 (1947);

- 23 -

Davis, Administrative Law Doctrines of Exhaustion of Remedies, Ripeness for Review, And Primary Jurisdiction: 1, 28 Tex. L. Rev. at 193 (same).

Thus, we are presented here with a two-stage administrative process for taking "final administrative action" much like the one that the APA recognizes that federal agencies may sometimes employ to take "final action." See 5 U.S.C. § 704; Darby, 509 U.S. at 154. And so, just as a federal agency's initial denial of a permit is not final under the APA when an agency rule or a statute requires further administrative review, so, too, the Planning Board's action is not "final" under the TCA, given the administrative review that the Board of Appeals must undertake in consequence of the Ordinance and Maine law.[5]

---

[5] The TCA provides for judicial review of "any final action or failure to act by a State or local government or any instrumentality thereof." 47 U.S.C. § 332(c)(7)(B)(v). In Omnipoint, we stated in dicta that the zoning board in that case was an "instrumentality" of the City of Cranston, Rhode Island. 586 F.3d at 47. Applicants contend that the Planning Board constitutes an "instrumentality" of the "local government," Rome, and that, for that reason, we may not consider the fact that the Planning Board's denial is subject to appeal to the Board of Appeals in determining whether that denial constitutes "final action." But whether a decision has been made by an instrumentality, and whether the decision that an instrumentality has made qualifies as "final action," are two separate questions. For the reasons we have explained, an administrative decision that may not be reviewed judicially until it has been reviewed administratively is simply not a "final action" under the TCA, just as it would not be under the APA. Therefore, instrumentalities can make tentative or interlocutory decisions, which are not "final" within the meaning of the TCA. And an instrumentality does so when it denies an application to build and

- 24 -

**F.**

The Applicants contend in the alternative that the District Court reversibly erred in ruling that the Planning Board's denial does not count as "final action," because the Board of Appeals had not been "properly created" and thus the Applicants could not be required to take an appeal to that Board. In making this argument, the Applicants acknowledge that the Ordinance expressly references the Board of Appeals. The Applicants also acknowledge that the District Court correctly ruled that the Ordinance "'merge[ed] into the pleadings'" and thus "properly consider[ed] it under a Rule 12(b)(6) motion to dismiss." Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001); Global Tower Assets, 2014 WL 3784233 at *2 n.3. The Applicants nevertheless contend that they have met their burden of pleading that they are challenging a "final action" under the TCA. Cf. Colo. Farm Bureau Fed'n v. United States Forest Serv., 220 F.3d 1171, 1173 (10th Cir. 2000)("Plaintiffs have the burden of identifying specific federal conduct and explaining how it is 'final agency action.'")(citing Lujan v. Nat'l Wildlife Fed., 497 U.S. 871, 882 (1990)).

---

that denial must be reviewed administratively before state law permits state court review. Thus, the characterization of the denial in this case as one made by a "local government" or "an instrumentality thereof" is no more determinative here than it was in Omnipoint, as the key point is that the Planning Board, however characterized, did not take "final action."

In making this argument, the Applicants contend in part that they were not required to plead that the Board of Appeals was not properly created, because exhaustion of remedies is an affirmative defense that plaintiffs generally need not allege in their complaint. See Jones v. Bock, 549 U.S. 199, 212, 217 (2007). But this argument simply confuses exhaustion with finality. And there is no doubt that the Applicants do bear the burden of demonstrating that they are challenging "final action." See Colo. Farm Bureau Fed'n, 220 F.3d at 1173 (10th Cir. 2000)(citing Lujan, 497 U.S. at 882).

Nor is there any doubt that the Applicants' complaint, standing on its own, does not meet that burden, given the reference to the Board of Appeals in the Ordinance. After all, the Applicants concede that the District Court properly considered the Ordinance in deciding the 12(b)(6) motion. And once the District Court did consider the Ordinance -- and its reference to the Board of Appeals -- the only fair inference that could be drawn from the complaint was that the Board of Appeals existed and could hear an appeal from the Planning Board, as neither the complaint, nor any document attached to the complaint, supported any inference to the contrary.

The Applicants respond that the District Court nevertheless "work[ed] a substantial injustice" by taking account of the Ordinance but not their contrary evidence concerning the

Board of Appeals before dismissing their complaint. That evidence consisted of a paralegal's affidavit, attached to the memorandum of law in opposition to Rome's motion to dismiss. The affidavit stated that an examination of Rome's town warrants showed that the Board had never been formed.

There are obvious differences, however, between the Ordinance and the paralegal's affidavit. And those differences bear on whether both should have been considered in assessing the 12(b)(6) motion, under the narrow exception to the rule that district courts may not ordinarily examine documents outside of the complaint in assessing motions to dismiss.[6] See Alternative Energy, 267 F.3d at 33 (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993))(describing the exception "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint."). But while the Applicants concede that the Ordinance may be merged into the complaint under that exception, they make no argument to us that the paralegal's affidavit qualifies for that exception as well. It is thus hard to see -- without more argument than the Applicants

---

[6] The District Court's decision analyzed the issue under Rule 12(b)(6), and the Applicants make no developed argument that it was wrong to do so. Therefore, the Applicants' arguments about what the District Court could have done had it addressed the issue under Rule 12(b)(1) are irrelevant.

have put forward -- what error the District Court committed in relying on the Ordinance, but not the affidavit, in evaluating whether the complaint pled facts sufficient to show that the Applicants were challenging a "final action."

Furthermore, we note that the District Court's decision not to merge the affidavit into the complaint hardly left the Applicants without options.  The Applicants could have simply sought to amend their complaint to add the necessary allegations after the Applicants' complaint had been dismissed without prejudice.  Instead, however, the Applicants chose to move for reconsideration under Rule 59(e), at which point they again attempted to present their evidence that the Board of Appeals had not been properly formed.  But having done so, they then chose not to appeal the denial of that motion on this ground.

## IV.

We now turn to the Applicants' federal constitutional due process claims.  The Applicants make no effort on appeal to distinguish between their procedural and substantive due process claims, and the District Court dismissed their federal due process "claims" without distinguishing between them.  Global Tower Assets, 2014 WL 3784233 at *11.  But we briefly consider each separately.

As to the Applicants' procedural due process claim, they do not address on appeal the fact that state law provided them a

- 28 -

process for seeking relief from the action of the Planning Board through appeal to the Board of Appeals, and in state court thereafter. See Wister, 974 A.2d at 907-12 (discussing Maine state court review of local land use decisions). Thus, to the extent that the Applicants' challenge to the District Court's dismissal of their procedural due process claim is not waived for lack of developed argument on appeal, see United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990), the challenge fails on the merits, as we have no basis for concluding that the applicants lacked an adequate state law remedy for any of the procedural defects that they allege. See Licari v. Ferruzzi, 22 F.3d 344, 348 (1st Cir. 1990).

The Applicants' substantive due process claim is premised on the purported conflict of interest that some members of the Planning Board had between their duties on the Planning Board and their membership in the BRCA, which publicly opposed the tower. Applicants' complaint alleges that those Planning Board members, through their membership in the BRCA, had a financial interest in conservation easements the BRCA held. Applicants' complaint also alleges that one member's brother was approached by a competitor to site a cell tower on his property, abutting the property where Applicants sought to site theirs. The apparent implication -- nowhere actually stated in the complaint -- is that

the members conspired to block Applicants' tower in order to facilitate the brother leasing his land to the competitor.

As we have long noted, the "run of the mill" land use dispute does not give rise to a viable substantive due process challenge. See Creative Environments, Inc. v. Eastabrook, 680 F.2d 822, 833 (1st Cir. 1982). And for good reason: "Every appeal by a disappointed developer from an adverse ruling by a local . . . planning board necessarily involves some claim that the board exceeded, abused or 'distorted' its legal authority in some manner, often for some allegedly perverse (from the developer's point of view) reason." Id. Given that the door to substantive due process claims in the land use context is only "slightly ajar" for "truly horrendous situations," Licari, 22 F.3d at 350 (quoting Nestor Colon Medina & Successors, Inc. v. Custodio, 964 F.2d 32, 45 (1st Cir. 1992)), "we see nothing in the present case to distinguish it sufficiently from the usual land developer's claim under state law to warrant recognition of a federal constitutional question." Creative Environments, 680 F.2d at 833.

The Applicants do contend that they "were subjected to a 10-month sham process." But, as they acknowledge, they agreed to extend the process on four separate occasions. And, in any case, such claims face a high bar. See Chiplin Enterprises, Inc. v. City of Lebanon, 712 F.2d 1524, 1528 (1st Cir. 1983)(complaint did not state a due process claim when it alleged "bad-faith" five

- 30 -

year delay in granting building permit); see also Rumford Pharmacy, Inc. v. City of East Providence, 970 F.2d 996, 1000 n. 8 (1st Cir. 1992). Moreover, the Applicants' vague allegations of conflicts of interest and financially motivated conspiracy do not -- at least without far more -- show that the Planning Board acted in the kind of conscience-shocking fashion that we require for substantive due process challenges to make it past the gate. See Creative Environments, 680 F.2d at 833; Licari, 22 F.3d at 350.

## V.

For the foregoing reasons, we **affirm** the District Court's order and judgment of dismissal.